# CHARLESTON.

HENNING *vs.* FISHER.

THOMAS A. HENNING, PLAINTIFF, AND APPELLEE, *against* WILLIAM FISHER, SAMUEL KINCAID, AND HENRY W. MOSS, DEFENDANTS AND APPELLANTS.

1873.
January
Term.

### Decided February 24th, 1873.

### SYLLABUS.

1. The recordation of a deed by a Clerk of a County Court, who continued to exercise his office after the State had passed the ordinance of secession, but while the County was under the Military power of the Confederates, was a valid recordation, and must be so recognized in all judicial proceedings.

2. K. conveyed F., by deed, a house and lot, which deed was duly recorded on the 16th day of March, 1863, subsequent to the docketing of two judgments by a judgment creditor of K—s. F. afterwards sold the house and lot to H. At the request of F., H. executed two bonds in favor of M. for $1.000 of the money, and delivered them to M. who, in consideration thereof, surrendered to F. a bond held on F. by him, (M.) and released the security thereon. M. obtained judgment on the bonds against H. H. then filed a bill in equity against K. F. and M. enjoining the collection of the judgment, on the ground of judgment liens existing on the property.

HELD,

That as to M. the bonds were good, and enforceable against H.

An appeal from the Circuit Court of Greenbrier County. The opinion of the Court sufficiently states the facts.

*Snyder*, for Appellants.

The Circuit Court should have dismissed the Plaintiff's bill.

1873.
January
Term.

Henning
v.
Fisher et als.

1st. The Plaintiff having voluntarily executed his bond to the Defendant, Moss, who was not a party to the sale of the house and lot, a Court of Equity can afford him no relief.

2nd. The bill fails to aver any *fact* tending to show that the deed from Kincaid to Fisher was not duly recorded in 1863.

3rd. The recitals of the bill do not show the existance of any specified judgments, or liens upon the house and lot; and,

4th. The bill does not aver that Kincaid had not other real estate sufficient to pay any and all judgments against him at the date of the sale, to Fisher.

First. The Plaintiff's bill alleges that the consideration of the bonds, upon which the judgment enjoined was recovered, was, "in part, for a house and lot,," sold by the Defendant, Fisher, to the Plaintiff. The Defendant, Moss, was no party to this sale, and it is not pretended that the house and lot had anything to do with the consideration which passed from Moss for these bonds. Fisher was indebted to Moss, and the Plaintiff, by executing his bonds to him, undertook to pay this indebtedness. So far as the bill shows, Moss did not even know the nature of the consideration which passed from Fisher to the Plaintiff as an inducement to execute his bonds in payment of Fisher's debt. Nor was it material for him to enquire. Had no consideration, whatever, passed from Fisher to the Plaintiff, still the Plaintiff, having voluntarily assumed the debt of Fisher to Moss, and executed his bonds therefor, he is bound to pay them. The Plaintiff certainly stands in no better position than if he had executed his bonds to Fisher, and Fisher had assigned them to Moss; and, upon their being presented to him, he promised to pay them, and executed his own bond in lieu thereof to Moss, the assignee. In such an event, he would destroy all the equities which he might have had against the original bonds, for he would therby release Fisher as assignor. And, by so

doing, would necessarily assume his liability, and could make no defence against Moss that could not have been made by Fisher. Haden *vs* Garden. 7 Leigh, 151-163. The mere promise of an obligator, that he will pay his bond, made to a third party, who, on the faith of that promise, and with the assent of such obligor, purchases [the bond, binds the obligor to pay it, although it may have been void between the original parties. In *Cleaton vs. Chambliss,* the general rule is stated to be, "that any damage, or any suspension or forbearance of his right, or *any possibility* of a loss occasioned by the promise of the obligator, is sufficient consideration for such promise and will make it binding although *no actual* benefit accrues to the party undertaking."—6 Rand. 90.

If the promise is made by the obligor, and the assignor has acted upon such promise, it can make no difference whether the facts which induced the promise existed or not, it being the fact that it has been acted upon that renders it conclusive.—*Davis vs. Thomas,* 5 Leigh, 1; *Smith vs. Stone,* 17 B. Monroe 168, and Dutchess, of Kingston's case, 2 Smith Lead, case (6th Am. Ed.) 750-1.

The case at bar, if possible, is yet more obligatory than the cases above referred to, for, in this case, the Plaintiff induced Moss to surrender his claim to Fisher by executing his own bond directly to him. This act imposed upon the plaintiff two distinct and independent obligations; one that he would pay the bond ; and the other that he would discharge the liability of Fisher to Moss. That the Plaintiff was ignorant of the fact that the consideration from Fisher to him, which moved him to execute the bonds to Moss, was invalid, can make no difference. It was his duty to inform himself, and, having failed, he will not be permitted to throw the responsibility of his ignorance and neglect upon Moss, who was not bound to know, and had no interest in ascertaiinng what arrangement was made between the Plaintiff and Fisher.—1 Greenl. on Ev. §207-6.

1873.
January.
Term.

Henning
v.
Fisher et als.

Second. The bill contains no averment of *any fact* to show that the deed from Kincaid to Fisher was not duly recorded in 1863. It admits that "the deed was spread upon record *by an officer* professing to act as Clerk, &c., on the day of its date." It then says, "he was not such officer; he ceased to be such when the State of Virginia seceded, or attemptd to secede, from the Union, in the year 1861, so the deed was void, &c." This is all that is stated to make the deed void. By what *act* did the Clerk cease to be an officer? Did he adhere to the Confederates, resign his office, fail to take the proper oaths, or what? There is no averment of anything of the kind. Then, can the Court, upon the mere allegation that "the State of Virginia seceded, or attempted to secede from the Union in the year 1861," hold that the Clerk thereby, or for that reason, ceased to be an officer?

But let us assume, what we presume was intended, but which was certainly not alleged by the Plaintiff, that the Clerk, at the time he recorded the deed, adhered to the Confederate cause, and was acting under, and within, the control of the seceded Government of Virginia. Would that make his acts void? If the Government under which he was acting was, in any sense, a Government, his acts were not void, although he may not have been an officer *de jure.—Griffin vs. Cunningham*, 20 Grat. 31, 41 and 87; *Wilcox vs. Smith*, 5 Wend. 231.

In *Sherfy vs. Argenbright*, the Supreme Court of Tennessee decided that, during the war, that State "was a government *de facto* in the highest degree. So closely resembling the lawful government that the mass of the people, looking to the possession, were, by every law, hnman and divine, bound to yield to it their obedience in both civil and military matters, and are excused and justified in doing so."—1 Hieskill, 128, see, also, *Griffin vs. Cunningham*, 20 Grat. 31.

In the case of *Texas vs. White*, the Supreme Court in

31

determining the validity of certain Acts passed by the Confederate Legislature of Texas, held "that acts necessary to peace and good order among citizens, such, for example, as acts sanctioning and protecting marriage and domestic relations, governing the course of descents, *regulating the conveyance and transfer of property, real and persnoal,* providing remedies for injuries to person and estate, and other similar acts, which would be valid if eminating from a lawful Government, must be regarded, in general, *as valid, when proceeding from an actual, though unlawful, Government.*"—7 Wallace, 733. In *Thorington vs. Smith,* the same doctrine is held and recognized.—8 Wallace 1.

These decisions are based upon natural justice, and should be sustained notwithstanding some of the rulings of the Courts of this State seem to be at variance with the principles they enunciate. The deed in this case was duly acknowledged and recorded, in conformity to the laws of the Government under which the parties lived at the time. Everything was done, that it was possible to do, to make the conveyance complete. Whether the Government under which the Clerk acted, was a Government *de facto,* of "paramount force," or "an actual, though unlawful Government," the acts of its officers, when not directly in aid of the war power, must be regarded as valid. In view of the surrounding circumstances, the peculiar situation of the parties, the decisions of the Supreme National Court, and of nearly, or quite all, our sister States, and the great principles of right and justice involved, it would be a matter of sincere regret, and a calamity from which the people of our State hoped to be relieved, if this Court could not feel itself justified in recognizing the validity of the acts of officers acting under the late State Government of Virginia.

Third. The bill simply refers to a detached list of judgments. These judgments are in no way described

or identified upon the face of the bill. They might be changed and others substituted, as often as the necessities for the success of the Plaintiff might require, without any alteration of his bill. The rules of pleading should, and do require the plaintiff to set forth the legal effect of, and describe, every paper which is made an exhibit of his bill, both for purpose of making his averments certain, and for the identification of the paper exhibited.—1 Dan. Chy. (3 Am. Ed.) 372-3.

Fourth. The Code, p. 666, Ch. 139, §9, among different aliences for value, requires the judgment creditor to subject the land last aliened first to the payment of his debt. The Plaintiff should, at least, present a *prima facie* case in his bill. This was not done in this case, because there is no allegation that the Defendant Kincaid, did not have, at the date of his sale to Fisher, other real estate sufficient to satisfy all judgments against him. If an injunction can be sustained without such an allegation, no vendor, whatever may be the value of his estate, is safe from its operation.

If either of the foregoing grounds are sustained, the Plaintiff's bill should be dismissed.

*Price*, for Appellee.

"A deed improperly admitted to record, either from want of acknowledgment, or want of proof by the requisite number of witnesses, or from any other cause, is not a recorded deed within the recording acts, and is not notice."—1 Matthews Digest, 559 note 8. Turner vs. Step, 1 Wash. 319. Currie vs. Donald 2, Wash. 64. Moore vs. Auditor, 3 Hen. & Munf. 232. Maxwell vs. Light, 1 Call, 117. Carr, Judge in Doswell vs Buchannan, 3 Leigh, 378. Glazebook vs Ragland, 8 Gratt. 332.

An unrecorded deed void as to creditors, Chap. 74 section 5, page 474, of Code. McClure vs. Thistle, 2 Gratt. 182. Withers vs. Carter, 4 Gratt. 407. Gurrant vs

Anderson, 4 Rand. 208. Code of Va. chap. 118 section 5, page 566. Code of W. Va. sec. 5 p. 414.

The officers who took the acknowledgment of, and recorded this deed were not recognized as officers.

Wylie vs. Brown, 2 West Va. R. 502. Hawver vs. Seldenridge, 2 W. Va. R. 274

MOORE, Judge.

On the 17th day of May, 1871, Thomas A. Henning filed his bill with injunction, before the Circuit Court of Greenbrier County, against William Fisher, Samuel Kincaid and Henry W. Moss, with exhibits, alleging that at the April term of said Court, on the law side, a judgment was rendered against him upon two bonds in favor of Henry W. Moss, for $660.35, with interest thereon, from the 18th day of April, 1871, until paid, and costs of suit, amounting to $17.13; that the bonds were given in part for a house and lot in the town of Lewisburg purchased by him from William Fisher, who purchased of Samuel Kincaid; that Kincaid executed a deed, therefor, to said Fisher, dated March 16th, 1863, which was not recorded, according to law, until the 16th November, 1871, when it was acknowledged and recorded; that it was *"true the deed was spread upon record by an officer professing to be the Clerk of the County Court, of Greenbrier, on the day of its date; but he was not such officer. He had ceased to be such when the State seceded, or attempted to secede from the Union in the year 1861. So the deed was void, * * * * against creditors and purchasers without notice."* That in the meantime, judgments were rendered against said Kincaid, *"and were registered with the Clerk of the County Court, and with the Recorder of said County,"* (a list of which judgments was filed with said bill.) He further alleged, that at the time he executed said bonds, he was ignorant of the *existence of said judgments, and liens against the property; and that before he could "be safe in paying off the judgment aforesaid,"* those *"anterior liens*

1873.
January
Term,

Henning
v.
Fisher et als.

*resting upon the property must be paid off.*" He filed, as an exhibit, a copy of the agreement between him and said Fisher, whereby, he alleged, "it will appear, that upon the payment of the purchase money, said Fisher is to make your orator a deed for the property, with covenants of general warranty," that as yet he had made no deed, "and if he were to make one of general warranty he is not, as your orator is advised and charges, responsible, and is the resident of another State;" that the clause, at the end of the agreement, showed, that $1.000 of the purchase money was to be paid to said Moss, for which, he, the Plaintiff, at the request of said Fisher, had executed his bonds to said Moss; but if he should pay said sum, without the payment of said judgments against Kincaid, he would be in great danger of losing it altogether; that for some of said judgments, Kincaid had given security; but if the security should have to pay the debt, he might be entitled to the rights of the judgment creditor." The Plaintiff then charged that Moss stood in the shoes of Fisher; that the bonds, on which the judgment was rendered, were given for so much of the purchase money of the property, and were subject to all equities growing out of the contract.

He, therefore, prayed that the judgment be enjoined, and the collection thereof be inhibited; that the purchase money be applied to the extinguishment of said liens, or the contract, between him and Fisher, be set aside and annulled; and for general relief.

The Defendants separately demurred and answered; and the Plaintiff replied generally, the depositions of Henning and Kincaid were also taken.

On the 19th day of December, 1871, the Court hearing the cause upon the bill, exhibits, answers, and general replications thereto, depositions and arguments of Counsel, refused to dissolve the injunction, being of opinion that further indemnity should be given to the Plaintiff before the injunction could be dissolved.

From this decree the Defendants have appealed.

The first question with which we are met, is: Was

the deed, from Kincaid to Fisher, duly recorded on the 16th day of March 1863?

It is argued by the Appellee, and alleged in the bill, that the deed was not recorded according to law, until the 16th day of November, 1870, when it was so acknowledged and recorded; that it was true the deed was spread upon the record by an officer professing to be the Clerk of the County Court, of Greenbrier, on the day of its date; but he was not such officer; that he had ceased to be such when the State of Virginia seceded or attempted to secede from the Union in the year 1861, and that the deed was consequently, void as to creditors and purchsers without notice. The answers of Kincaid and Fisher affirm that it was, at that time, 16th day of March, 1863 admitted to record in the County Clerk's office, of Greenbrier County.

Whatever may have been the ruling heretofore, in this State, it must now be decided, upon the authority of the Supreme Court of the United States, in Texas vs· White, 7 Wallace, 733. Thorington vs. Smith, 8 Wallace, 1: and the Supreme Court of Virginia, in Griffin vs. Cunningham, 20 Gratt. 31: and of the Supreme Court of Tennessee, in Sherfy vs. Argenbright, 1 Hieskill, 128, followed by this Court, in the case of Matthew Harrison, Ex'r., vs. Farmer's Bank of Virginia, decided this term, that whether the Government, under which the Clerk acted, at the time he recorded the deed·"was a Government *de facto* of *paramount force*, or an *actual* though *unlawful Government;* the acts of its officers, when not directly in aid of the war power, must be regarded as valid." For, as stated by Chief Justice Chase, in Texas vs. White, "Acts necessary to peace and good order among citizens, such for example, as acts sanctioning and protecting marriage and domestic relations, governing the course of descents, regulating the *conveyance* and transfer of property, real and personal, and providing remedies for injuries to person and estate,

and other similar acts, which would be valid if emi-
nating from a lawful government, must be regarded in
general as valid when proceeding from an actual, though
unlawful government." It is an historical fact, that the
recognized lawful State Government, at the time, had
its Capital at the City of Wheeling. It had its troops in
the field, aiding the Federal forces, to maintain, not only
the Federal, but its own authority over its territory;
but, nevertheless, the Confederate troops held the
County of Greenbrier by paramount force, and thus main-
tained over it the State organization and authority
which adheared to the Confederate cause and held its
Capital at Richmond. However much the citizens of
Greenbrier might have desired to organize under the
"Restored State Government," they could not then do
so, because of the *paramount force* of the State Govern-
ment at Richmond; and although that Government was
declared to be an unlawful Government, it was, never-
theless, an actual Government, of paramount force at
that time, and the acts of its officers, whether State or
County, not directly in aid, or furtherence of the war
—power must be declared, under the authorities cited,
valid. Therefore the recordation of the deed, made in 1863,
was valid, and must be so recognized in all judicial pro-
ceedings. Consequently judgments rendered against
Kincaid, or docketed subsequent to the recordation of
the deed of March 16th, 1863, cannot be a lien upon
the land. The judgments of Joseph Feamster, having
been docketed prior to that time, were liens upon said
land. And if they continued as liens, at the time Plain-
tiff purchased the property, he cannot complain now,
so far as Moss is concerned; because the judgments
being docketed were notice of the existing liens. There-
fore, having, at least, constructive notice of the Feam-
ster liens, at the time he executed and delivered the
bonds to Moss; as his, without condition, and thus
induced Moss to change his position by surrendering to

1873.
January
Term.

Henning
v.
Fisher et als,

Fisher, and cancelling, certain bonds secured, which Fisher had made and delivered to Moss for money loaned to him by Moss, and to release the lien which he held to indemnify him, surely the Plaintiff does not now come into equity with clean hands. It was none of Moss's concern what was the arrangement made between the Plaintiff and his vendor, Fisher. If Henning delivered to Moss the bonds without coudition, and thereby induced Moss to cancel and surrender to Fisher the bonds, which he held against Fisher, and release the security, Henning is bound by it, because the surrender of the Fisher bond, and release of the security thereof, by Moss, at the instance of Henning, was a sufficient consideration for the Henning bonds; if viewed otherwise, it would be sanctioning injustice, and a possibility of loss to Moss by the deliberate act of Henning, and that, too, when Moss was not in fault, which equity will not sanction.

Whatever rights the Plaintiff may have against Fisher and Kincaid as to compelling the judgment creditors Feamster, to first exhaust his liens on the other real estate of Kincaid, or seeking other means of paying off the liens, he has none against Moss.

I am therefore of opinion that the decree appealed from is erroneous, and must be reversed, the injuncti on dissolved, and the bill dismissed, as to Moss, with costs to the Appellants, in this Court, and that Moss recover his costs in the Court below, against the Appellee Henning; and the cause must be remanded to the Circuit Court of Greenbrier County, for further proceedings to be had therein as to all the parties except Moss.

HAYMOND, President, and PAULL and HOFFMAN, Judges, concur in the foregoing opinion.