# CHARLESTON.

STATE *ex rel.* W. H. WHEELER & CO. v. MORRIS P. SHAWKEY.
STATE *ex rel.* W. H. WHEELER & CO. v. BOARD
OF PUBLIC WORKS *et al.*

Submitted July 24, 1917.    Decided July 24, 1917.

1. SCHOOLS AND SCHOOL DISTRICTS—*School Book Commission—Can-cellation of Contract—Statute.*

   The state school book commission created by §155a, ch. 45, Code, has no power, after completion of its work and adjournment *sine die,* to reconvene and cancel a contract, duly executed, created by the aceptance of the bid of a publisher and the formal signa-tures of the proper parties, except for cause by law recognized as sufficient to invalidate any other contract. (p. 641).

2. MANDAMUS—*Superintendent of Schools—Contracts.*

   The superintendent of free schools, *ex officio* a member and secertary of the commission and custodian of its records, can not, except for such cause, withhold from a publisher whose books have been adopted as required by law a copy of a duly executed contract therefor; and mandamus lies to compel such delivery. (p. 641).

3. SCHOOLS AND SCHOOL DISTRICTS—*School Book Commission—Con-tracts—Copy.*

   The statute creating the state school book commission directs the chairman thereof to execute in duplicate contracts awarded by it, and its secretary to deliver one copy to the successful bidder. No order of the commission therefor is necessary. (p. 641).

4. SAME—*School Book Commission—Validity of Acts.*

   The acts of such commission are to be treated as valid and binding, although the appointment of its members may have been irregular. Invalidity of its acts can not by inference arise out of mere prematurity in appointment, where the right so to act is not challenged in a legal manner by competent authority. (p. 645).

5. MANDAMUS—*Board of Public Works—Approval of Bond.*

   The board of public works can not, except for good cause, re-fuse to approve a bond duly executed to secure performance by a publisher of a contract awarded by the state school book com-mission. Such approval is a mere ministerial act; and mandamus lies against the members of such board, except the governor, to compel performance of that duty. (p. 645).

Original mandamus by the State, on relation of W. H. Wheeler & Co., a corporation, against Morris P. Shawkey, Superintendent of Schools, and the Board of Public Works and others.

*Peremptory writs awarded.*

*Geo. W. McClintic, J. E. Chilton,* and *S. B. Chilton,* for petitioner.

*E. T. England,* Attorney General, *Frank Lively,* Assistant Attorney General, and *Fred O. Blue,* for respondents.

LYNCH, PRESIDENT:

The legislature in 1909 created a state school book commission, to consist of the state superintendent of free schools, *ex officio* secretary, and eight other citizens having the qualifications prescribed by the act, to be appointed by the governor on or before the first day of April, 1912, and every fifth year thereafter, each member thereof to qualify and enter upon the discharge of his duties thirty days after his appointment and serve five years therefrom unless sooner removed by the governor. Acts 1909, ch. 23; Code, ch. 45, §155a. The act requires the commission to meet and organize by the election of a chairman on the first Tuesday in May following the appointment of its members, and then to request the publishers of text-books to submit samples of books and the prices therefor on all subjects required to be taught in the schools of the state; and, on the first Tuesday in June following, to adopt rules of procedure, consider the merits of the books offered, select and adopt one of each series so used. It makes it the duty of the attorney general to prepare in duplicate the contracts with the publishers whose books are adopted for the period covered by the appointments, and of the chairman of the commission to execute them on its behalf, a copy for the contractor, the other for filing with the secretary of the commission: and requires a bond by each successful bidder, in an amount not less than ten thousand dollars, payable to the state, conditioned on the faithful and honest performance of his contract.

The appointees for the five year period commencing in

1917 convened at the times and places prescribed, at the first meeting elected Vernon E. Johnson, one of its members, chairman, and at the second meeting selected and adopted, among others, a number of the text-books published by W. H. Wheeler & Company, a corporation, who and such chairman executed the contract therefor as required, and delivered the original and duplicate to the secretary of the commission; and the publisher also executed and delivered the bond to the board of public works for its approval, as required by the act. The secretary, prior to the institution of these proceedings, for some reason not then disclosed, either refused or failed to re-deliver a copy of the contract to Wheeler & Company, and the board of public works to approve the bond, executed as prescribed by the commission. The alternative writ of mandamus prayed in these proceedings, the Wheeler company being the relator in each of them, required M. P. Shawkey, superintendent of schools, either to deliver or show cause why he should not be compelled to deliver a copy of the contract to the relator, and the board of public works to approve the bond or show cause why it withheld such approval.

The sole cause assigned by Shawkey, in his original return, for such failure or refusal, is that the selection and adoption of school books and the contracts therefor remained under the further advisement and control of the commission, then convened in the city of Charleston to reconsider its former action, and its deliberations were not finally concluded, wherefore it was improper and a violation of his official duty to deliver the duplicate to the petitioner, which he had not been directed to do by the commission; and, in his amended and supplemental return, that the state school book commission, on July 10, met in the city of Charleston, in response to a call of the chairman, for the purpose, among other things, of reconsidering its action of June 6, and adjourned on the 11th without taking any action upon the question, because of the pendency of these proceedings, to reconvene at the call of the chairman; that on July 19, in response to such call, it again convened and reconsidered the adoption of books, reversed its former action in many in-

stances, and directed him and its chairman to complete the contracts for the various books then adopted.

The board of public works and the several members thereof appeared as commanded by the writ, moved to quash it. and dismiss the petition, assigning several grounds therefor; and, for answer thereto, reiterate substantially the same matters contained in the returns of the superintendent of schools, and add that they have no right or power to approve or dis- approve a bond given for the performance of the contract with the relator until it shall have been completed and de- livered to the relator and the deliberations of the book com- mission concluded ''as required by the statute''; and that, by an order entered of record on its minutes, the governor, a member of the board of public works, was directed to re- quest the commission to reconvene to reconsider its former action as to school text-books, and it did reconvene July 10, as requested, but adjourned without proceeding to such reconsideration.

The return of the governor contains the same averments as the answers of the other respondents, except he contends, first, that his action is not subject to the control of the court by mandamus; and, second, that the contract with the relator ''was not made in accordance with the judgment of the mem- bers of the school book commission acting together in their official capacity and sitting as a board, but was the result of certain negotiations and compromises between the agents of the companies who secured similar contracts and certain members of the commission, and said contract, if not fraudu- lent, is at least void as contrary to public policy''. The al- legations as to negotiations and compromises conducted or made outside of and not in actual session of the commission are denied by replications and by the answers of the individ- ual members of the commission, and not proved or attempted to be proved by any evidence whatsoever, the burden of sus- taining them being upon the respondents.

The first ground assigned in support of the motion to quash the alternative writ and dismiss the petition is that, while this proceeding is only nominally in the name of the state, it is in effect a suit against the state for the purpose of con-

trolling the board of public works in administering the affairs committed to it by law, and therefore in contravention of §35, art. 6 of the constitution, which declares that "the state of West Virginia shall never be made a defendant in any court of law or equity". These proceedings, as we conceive them, clearly do not fall within the inhibition of the constitutional provision cited. No right of the state is involved. No debt, liability or charge is asserted or sought to be enforced against her. No violation or breach of any contract is claimed by the, relator. The proceedings bear no sort of resemblance to the case of *Miller Supply Co.* v. *State Board of Control,* 72 W. Va. 524. In that case the plaintiff attempted to recover of the board of control a judgment as for the breach of an alleged contract, and thereby to impose a liability upon the state, to be satisfied only by a diversion of public funds appropriated for other purposes. There is no such attempt here. The approval of the bond of the relator is a mere ministerial act confided by the legislature to the board of public works. Such approval does not operate to affect any contract with the state or any funds of the state. Nor are these proceedings in effect an interference with the rights or administrative duties and obligations of the board of public works, or with any of the state's administrative branches or departments.

By the second ground for the motion the respondents challenge the regularity and validity of the appointment of the several members of the school book commission, in that they were appointed March 3, 1917, and attempted to qualify before the term of the former members had expired, and therefore that the acts of the commission in adopting text-books and authorizing the contract with the petitioner are null and void and without authority of law.

Whether the appointments made on March 3 were premature or irregular, a question not decided, deserves but a brief notice and comment. We need only cite some of the decisions of this court consistently holding that where the interests of the public or third persons are concerned full faith and credit shall be accorded to the acts of *de facto* officers. At all events, the duties performed by the commission, conceding

the prematurity of the appointments, come within the protection of the rule laid down in *Franklin* v. *Vandervort,* 50 W. Va. 412, that, upon principles of public policy and justice, the acts of any public official, though not those of a lawful officer, are to be treated as valid, where they are done under the color of an appointment, although irregular or made without authority of law, as where the statute authorizing it is afterwards declared unconstitutional. The reason underlying the rule is declared in *Henning* v. *Fisher,* 6 W. Va. 238, *Clay* v. *Robinson,* 7 W. Va. 348, *McClure* v. *Johnson,* 14 W. Va. 432, *Griffin* v. *Cunningham,* 20 Gratt. 31, and *McCraw* v. *Williams,* 33 Gratt. 510, to be that the soundest principles of public policy and the protection of the welfare of society demand that the acts of *de facto* officers shall be deemed and treated as binding and valid as the acts of officers *de jure.* In line with these decisions, and to emphasize the necessity of adhering to the principles stated, the legislature enacted §15, ch. 7, Code, saying: "All judgments given and all acts done by any person, by authority or color of any office, or the deputation thereof, under the restored government of Virginia or of this State, before his removal therefrom, shall be valid, though it may afterwards be decided or adjudged that he was not lawfully elected or appointed or was disqualified to hold the office, or that the same had been forfeited or vacated".

Besides, since the date of these appointments no other school book commission has performed or attempted to arrogate to itself the right to discharge the important duties entrusted to such a commission by the legislature. No rival organization of the same or like character, pretending to act in the selection and adoption of school books, has appeared to contest the right of the present one to perform these functions, nor any one or more private citizens or public officials to obstruct the performance of the functions assigned to the commission as at present constituted, by legal proceedings or otherwise, save by this indirect and collateral method.

Nor does the charge that the contract has not been completed, and hence remains subject to the control and further deliberations of the school book commission, accord with the

plain import of the minutes of the commission detailing its action at the June meeting, as exhibited with the answer of its secretary. They show indisputably that the commission then considered and adopted the text-books to be used in the public schools of the state for the ensuing five year period, the contract to furnish some of which was awarded to the relator at the prices offered by it, fixed the penalty of the bonds required of successful bidders, ascertained and entered of record the expense and *per diem* accounts of the members, and adjourned *sine die* at one o'clock June 6, 1917. Promptly thereafter the contract with and bond by the relator were executed in due form, and lodged the first with the secretary of the commission and the second with the board of public works. The only inference possible is that the commission, at the time it adjourned, had completely performed every duty imposed by the statute. Nothing the performance of which was committed to it remained undone or open for further deliberation or determination. The selection and adoption of school books for the succeeding five year period thereby became a closed question. Besides, the statute makes no provision for the reconvening of the commission to open and reconsider anew any act theretofore performed by it. The sole purpose for which it is authorized to reconvene is the adoption of books other than those first selected where any successful bidder fails to contract or the books contracted for can not be secured. Even this provision may or may not require the re-assembling of the commission. It may or may not be necessary. If necessary or vital after adjournment, that body may lawfully reassemble to supply the deficiency. There is no authority to reconvene for any other purpose. It must be assumed, therefore, that the adjournment order was final and conclusive; that all the school textbooks had been selected and adopted and the contracts therefor specifically awarded, and that nothing remained unfinished except the formalities attendant upon the execution of the contracts and the delivery and approval of the bonds. Indeed, these records exclude any other hypothesis. The minutes, it is true, do not show, nor was it necessary they should show, that the president of the com-

mission was directed to execute the contracts with the publishers; because "when selections and adoptions of books have been properly made it shall be the duty of the chairman of the state school book commission to execute contracts therefor with the publishers thereof for a period of five years beginning July first following". The requirements of these provisions were adhered to strictly by the chairman and the relator. It did all that was required of it to obtain the written evidence of the agreement to which it was entitled.

Contracts with the state school book commission stand on the same solid foundation, and are to be dealt with on the same general rules and legal principles, as contracts between individuals. They are entitled to as much respect and are as enforcible as private contracts. Whether the school book commission acted prudently or wisely it is not within our province, or the province of any member of the board of public works, or all of its members combined, to say. The legislature has entrusted these matters solely to the sound discretion and judgment of the state school book commission; and, if free from fraud, accident or mistake and not otherwise invalid, its action is conclusive and not subject to the control of any other power or authority. Nor is the contract, when awarded, subject to alteration or impairment by the voluntary act of the commission. *State* v. *Poole,* 26 Mont. 22. See also *Marbury* v. *Madison,* 1 Cranch 137; *State* v. *Barbour,* 53 Conn. 76.

It is urged that the legislature, by requiring the board of public works to approve the bond, intended to confer on it authority to exercise a discretion which the court can not control by mandamus; from which the only permissible conclusion is that, without assigning cause therefor, captious or sound, the board arbitrarily may refuse to give its approval, though the bond be in due form, properly executed and with ample security, if for any reason whatever the board shall be of opinion that the commission has acted unwisely or imprudently in the discharge of its official functions. This conclusion is permissible, because nowhere in any answer does any respondent in anywise attempt to sustain by proof, though averred, any impropriety committed by any one or

more members of the school book commission in the discharge
of its official duties, nor any formal defect in the bond or
inadequacy of the security offered by the relator.   The re-
spondents seem to be content with ·generalities, unsustained
by testimony when put in issue in legal form.   No other
cause for the refusal to approve the bond do the members of
the board show.   Clearly, these are insufficient to justify
further delay in the performance of that duty.   The respond-
ent members of the board of public works cite and rely on
*Effingham, Maynard & Co.* v. *Hamilton,* 68 Miss. 523.   In
some respects the facts of the two cases are similar.   Each
of them involves the selection of school textbooks by a com-
mission constituted by the legislature.  ·After awarding the
contract on October 6 in the case cited, the committee ad-
journed.   The superintendent refused to execute and deliver
to the successful bidder a copy of the contract as required,
and it prayed a writ of mandamus to compel delivery.   After-
wards the committee, not having performed all the duties
required of it, reconvened, revised its action, selected and
contracted for books other than those published by the re-
lator.   These were purchased by patrons, introduced into
the schools, and, before the petition was filed, were being
taught therein.   Because of this delay and the incurrence of
this expense, the court refused the relief prayed, but said:
"Upon the facts stated in the petition before us, and which
upon demurrer must be taken as true, the right of the pe-
titioners to have the contract made with them by the defend-
ant, and have their books selected by the committee on the
6th of October taught in the public schools of Holmes county,
is indisputable.   The refusal of the defendant to contract
with them, as required by law, was wholly indefensible.   He
had no discretion about it.   His plain duty was to proceed to
contract, in pursuance of the action of the committee, and
then 'to see that only the adopted text-books are used' in the
schools; and if this were a matter affecting only the parties
to this action, there could not be a doubt of the right of the
petitioners to compel the performance of his official duty by
the defendant in a matter wherein they have a pecuniary in-
terest.   *   *   *   Patrons of the schools have incurred the

expense of procuring the books (last selected and adopted), and the teachers are required by the superintendent of education to teach these books, and have no discretion about it. In view of these complications, and the evil consequences likely to arise affecting public interests, we deem it proper to deny the remedy sought''.

The relator presents a case which clearly and conclusively shows its right to some relief. It is entitled to have the contract delivered and the bond approved. The return of none of the respondents except the governor presents a valid reason for withholding what it asks. These answers show no legally sufficient excuse for failure of the commission's secretary to deliver to the relator a duplicate of the contract, and of the members of the board of public works to approve the bond. If the returns did show such excuse, there might perhaps be some substantial reason for a further discussion of the claim asserted that the approval is discretionary. But surely some reasonable extenuation for the inaction of the board must be made to appear to shield it from compulsion to perform this duty. A mere arbitrary and unexplained lack of action will not suffice. The act of approval is ministerial; and the authorities generally hold that, except as to chief executive officers, performance by public officials of mere ministerial acts may be compelled by mandamus. 9 Enc. Dig. 515.

Writs awarded.

*Peremptory writs awarded.*