310 S.E.2d 675

**PITTSBURGH ELEVATOR COMPANY**

v.

**The WEST VIRGINIA BOARD
OF REGENTS.**

**Jason MARTIN, et al.**

v.

**The WEST VIRGINIA BOARD OF
REGENTS, et al.**

**PITTSBURGH ELEVATOR CO.**

v.

**BAKER AND COOMBS, INC.**

No. 15438.

Supreme Court of Appeals of
West Virginia.

June 30, 1983.

Rehearing Denied Oct. 14, 1983.

Richard A. Hayhurst, Davis, Davis, Hall & Clovis, Parkersburg, for Pittsburgh Elevator Co.

Steptoe & Johnson, Herbert G. Underwood, Irene M. Keeley, Clarksburg, Edward W. Eardley, Charleston, for Bd. of Regents.

McGRAW, Chief Justice:

This is an appeal by the Pittsburgh Elevator Company challenging two rulings of the Circuit Court of Monongalia County. The first is an order which granted the motion of the appellee, the West Virginia Board of Regents, to dismiss the appellant's complaint, previously transferred from the Circuit Court of Kanawha County and consolidated with proceedings pending in Monongalia County, for the reason that venue was improper in the Circuit Court of Monongalia County. The second is the court's refusal to transfer the consolidated proceedings to the Circuit Court of Kanawha County. The appellant contends that venue was proper in the Circuit Court of Monongalia County, or, in the alternative, that the court abused its discretion in re-

fusing to transfer the consolidated proceedings to the Circuit Court of Kanawha County. We find that venue is proper in the Circuit Court of Monongalia County, and, therefore, reverse the order of the lower court.

The facts are not in dispute. On October 23, 1979, Jason Martin, then four years of age, fell from the stage of the main theater in the Creative Arts Center at West Virginia University, located in Morgantown, Monongalia County, West Virginia. On January 14, 1981, the child and his parents instituted an action for damages in the Circuit Court of Monongalia County against the appellee, the West Virginia Board of Regents, as owner of the Creative Arts Center, and against various other defendants involved in the design and manufacture of the stage, including the appellant, the Pittsburgh Elevator Company.

On February 9, 1981, the appellee West Virginia Board of Regents moved to dismiss the Martin's complaint on the grounds that under the provisions of W.Va.Code § 14–2–2 (1979 Replacement Vol.) a proceeding against a state agency may only be brought in the Circuit Court of Kanawha County.[1] By order entered March 4, 1981, the court granted this motion, dismissing the appellee from the action, without prejudice. The court further ordered that the action should remain on the docket of the Circuit Court of Monongalia County as against the remaining parties.

Subsequently, the appellant instituted an action in the Circuit Court of Kanawha County seeking indemnity, or, if appropriate, contribution from the appellee for any liability which might result from the suit pending in the Circuit Court of Monongalia County. On March 9, 1981, the appellant filed a motion in the Circuit Court of Monongalia County seeking to transfer the action pending in that court to the Circuit Court of Kanawha County and to consolidate it with the appellant's action. After a hearing on March 20, 1981, the court entered an order granting the motion to consolidate the two actions, but moulding the relief to transfer the action pending in the Circuit Court of Kanawha County to the Circuit Court of Monongalia County, rather than vice versa, as requested in the appellant's motion.

Thereafter, on March 31, 1981, the appellee moved to dismiss the appellant's complaint on the grounds that under the provisions of W.Va.Code § 14–2–2 a proceeding against a state agency may only be prosecuted in the Circuit Court of Kanawha County. The appellant asserts that at the hearing on this motion, held April 22, 1981, the court denied the appellant's spoken motion to transfer the entire consolidated action to the Circuit Court of Kanawha County.[2] By order entered May 6, 1981, the court granted the appellee's motion and dismissed the appellant's complaint without prejudice.

I

The threshold question raised by the appellee is whether the dismissal below without prejudice for lack of venue under W.Va.R.Civ.P. 12(b) constitutes an appealable order. The appellee contends that the court's order does not constitute a final judgment from which an appeal may be taken, and therefore, the appellant's writ of error should be dismissed as an improvidently awarded interlocutory appeal.

■ The appealability of a dismissal under Rule 12(b) without prejudice for lack of venue is an issue of first impression in West Virginia. The appellee argues that under W.Va.R.Civ.P. 41(b) and this Court's holding in *Sprouse v. Clay Communications, Inc.*, 158 W.Va. 427, 211 S.E.2d 674 (1975), a dismissal without prejudice for lack of venue does not constitute an appealable order. In *Sprouse*, we adopted the majority view regarding the effect of a dismissal under Rule 12(b)(6), which maintains that a dismissal for failure to state a

1. W.Va.Code § 14–2–2 provides, in pertinent part: "The following proceedings shall be brought and prosecuted only in the circuit court of Kanawha County: (1) Any suit in which ... a state agency is made a party defendant ...."

2. A transcript of the hearing is not contained in the record. The appellant's assertion is not disputed by the appellee.

claim is a final judgment unless the court specifically dismisses the complaint without prejudice. The view adopted in *Sprouse* is founded upon Rule 41(b), which provides, in pertinent part: "Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits." Since the court below specifically dismissed the appellant's complaint "without prejudice," the appellee contends that under Rule 41(b) and *Sprouse*, the order is not appealable. We disagree.

We note initially that Rule 41(b) contains no affirmative statement to the effect that a dismissal under Rule 12(b) without prejudice for lack of venue is not an appealable order. Moreover, Rule 41(b) is concerned primarily with involuntary dismissals for failure to prosecute, and as such, its relevance to the issue raised here is questionable at best. Even if one assumes that Rule 41(b) is relevant to the issue raised, it could reasonably be argued that the general rule contained therein is that an order of dismissal is normally considered an adjudication on the merits,[3] and that the rule simply does not address a dismissal for lack of jurisdiction or for improper venue.

Generally, it has been held that an order dismissing a complaint, but not the underlying action, is not a final order and therefore is not appealable. *See California v. Harvier*, 700 F.2d 1217 (9th Cir.1983); *Elfenbein v. Gulf & Western Industries, Inc.*, 590 F.2d 445 (2d Cir.1978); *Local 179, United Textile Workers of America v. Federal Paper Stock Co.*, 461 F.2d 849 (8th Cir.1972); *Atkins v. Morgan*, 364 F.2d 822 (10th Cir.1966). The rationale advanced for this distinction has been that the dismissal of a complaint is not a final order because the complaint is still open to amendment. *See Jones v. Pitchess*, 469 F.2d 678 (9th Cir.1972); *Grantham v. McGraw-Edison Co.*, 444 F.2d 210 (7th Cir.1971); *Epton v. Hogan*, 355 F.2d 203 (2d Cir.1966).

Despite the general rule that dismissal of a complaint is not appealable, courts have held that where it is clear that the action could not be saved by an amendment of the complaint which the plaintiff could reasonably be expected to make, the order dismissing the complaint is final and appealable. *See Proud v. United States*, 704 F.2d 1099 (9th Cir.1983); *Chavez v. Santa Fe Housing Authority*, 606 F.2d 282 (10th Cir.1979); *Local 179, United Textile Workers of America v. Federal Paper Stock Co., supra*. Additionally, some courts have held that if a plaintiff declares his intention to stand on his complaint, the order to dismiss may be considered final and appealable. *Borelli v. Reading*, 532 F.2d 950 (3rd Cir.1976); *Olson v. Rembrandt Printing Co.*, 511 F.2d 1228 (8th Cir.1975); *Rail-Trailer Co. v. ACF Industries, Inc.*, 358 F.2d 15 (7th Cir.1966); *United Steelworkers of America v. American International Aluminum Corp.*, 334 F.2d 147 (5th Cir.1964); *Wallingford v. Zenith Radio Corp.*, 310 F.2d 693 (7th Cir. 1962).

Thus, the fact that the dismissal is deemed "without prejudice" by the trial court is not dispositive of the issue. As is stated in 9 *Moore's Federal Practice* ¶ 110.08[1] (1983): "If ... the motion is sustained and the effect is to dismiss the action for want of jurisdiction, either of the person or the subject matter, or because of improper venue, or for any other reason, although the dismissal is without prejudice, the judgment is final." Similarly, the Alaska court in *Sherry v. Sherry*, 622 P.2d 960, 964 n. 4 (Alaska 1981), has stated, "Although a dismissal is labeled as without prejudice, it may have the opposite effect. The appealability of an order depends on its effect rather than its language. *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 603 (5th Cir.1976)." *See also Dredge Corp. v. Peccole*, 89 Nev. 26, 505 P.2d 290 (1973); *Daar v. Yellow Cab Co.*, 63 Cal.Rptr. 724, 67 Cal.2d 695, 433 P.2d 732 (1967); *State*

---

**3.** This, essentially, is the position the Court adopted in *Sprouse v. Clay Communications, Inc., supra*, 158 W.Va. at 461, 211 S.E.2d at 696, where the Court held that a dismissal under Rule 12(b) "shall be *presumed* to be on the merits, *unless* the contrary appears in the order ...." (emphasis in original).

*Board of Barber Examiners v. Edwards,* 76 Ariz. 27, 258 P.2d 418 (1953). Therefore, if the effect of a dismissal of a complaint is to dismiss the action, such that it cannot be saved by amendment of the complaint, or if a plaintiff declares his intention to stand on his complaint, an order to dismiss is final and appealable.

In *Bragg v. Reed,* 592 F.2d 1136, 1138 (10th Cir.1979), the court adopted the position that it would no longer attempt to distinguish between the dismissal of a complaint and dismissal of the action, instead focussing on the actual effect of the dismissed order. This position seems sound. Rule 3 of the West Virginia Rules of Civil Procedure provides, "A civil action is commenced by filing a complaint with the court." Therefore, if the complaint is dismissed, it follows that, in the absence of clear indications to the contrary, the action is also dismissed.

Here, it is clear that despite the trial court's labelling of the dismissal as "without prejudice," the appellant's action could not be saved by amendment, and was dismissed in toto as far as the Circuit Court of Monongalia County was concerned. Although the appellant could have pursued its cause of action in Kanawha County, it desired to stand on its complaint and test the correctness of the lower court's ruling. The right of the appellant to insist on venue in Monongalia County should not be lightly discounted. Historically, the concept of venue is intertwined with the ancient procedure of having a cause heard by jurors drawn from the region in which the cause of action arose. As Holdsworth states: "The rules of venue carry us back to the early days of the jury system, when the jury were as much witnesses as judges of the facts." IX W. Holdsworth, *A History of English Law* at 258 (1966) (footnote omitted). Thus, venue would lie only in the place "where the events alleged in the pleadings had happened, because the sheriff could not otherwise have summoned a jury who would know the real facts of the case." V W. Holdsworth, *supra* at 117. Procedural changes eventually transformed the character of the jury from that of witness to that of judges of the facts, and, therefore, lessened the importance of drawing the jury from the locality of the disputed occurrence. III W. Holdsworth, *supra* at 654. Nevertheless, the custom of drawing the jury from the region where the cause arose endures in our law which provides that venue lies in the county where the cause of action arose. *See* W.Va.Code §§ 56–1–1, –2 (1966); *Hesse v. State Soil Conservation Committee,* 153 W.Va. 111, 168 S.E.2d 293 (1969).

Despite the divergence of the rule which provides venue in the place where the action arose from its original justification, it continues to serve important purposes in our judicial system, in that it permits one who has been injured in his person or property to have his injury and its recompense adjudged by his neighbors in the community. "The verdict of the jurors is not just the verdict of twelve men; it is the verdict of a *pays,* a 'country,' a neighborhood, a community." F. Pollock & F. Maitland, *History of English Law* at 624 (1968).[4]

Accordingly, we conclude that the lower court's order dismissing the appellant's complaint for lack of venue is a final order and therefore is appealable. *See* W.Va.Code § 58–5–1 (1966). As the Court stated in syllabus point one of *Posten v. Baltimore & Ohio Railroad Co.,* 93 W.Va. 612, 117 S.E. 491 (1923): "[A]n order of the circuit court dismissing ... [a] defendant is in the nature of a final order, and is reviewable in the Supreme Court upon writ of error ...." *See also Dick v. Robinson,* 19 W.Va. 159, 164 (1881) ("A decree dismissing a bill as to a defendant is as to such defendant a final decree.").

---

**4.** This principle is especially relevant with regard to the taking or damaging of private property for public use. Thus, our constitution provides that compensation shall be ascertained not by a jury of peers, but "by an impartial jury of twelve *freeholders."* W.Va. Const. art. III, § 9 (emphasis added). This requirement that the jury be composed of freeholders has particular significance in that the jurors, as taxpayers, have a stake in the outcome of the case to the extent that they will be participants in the payment of the recovery.

## II

The crucial issues raised in this case involve the effect of W.Va.Code § 29–12–5 (1980 Replacement Vol.), which authorizes the State Board of Insurance to procure liability insurance on behalf of the State,[5] upon the exclusive venue provisions of W.Va.Code § 14–2–2, and the specious tenet of law that state agencies are immune from suit under W.Va. Const. art. VI, § 35.[6]

5. W.Va.Code § 29–12–5 provides:

The board shall have general supervision and control over the insurance of all state property, activities and responsibilities, including the acquisition and cancellation thereof; determination of amount and kind of coverage, included [including] but not limited to deductible forms of insurance coverage, inspections or examinations relating thereto, reinsurance, and any and all matters, factors and considerations entering into negotiations for advantageous rates on and coverage of all such state property, activities and responsibilities. Any policy of insurance purchased or contracted for by the board shall provide that the insurer shall be barred and estopped from relying upon the constitutional immunity of the State of West Virginia against claims or suits. The board may enter into any contracts necessary to the execution of the powers granted to it by this article. It shall endeavor to secure the maximum of protection against loss, damage or liability to state property and on account of state activities and responsibilities by proper and adequate insurance coverage through the introduction and employment of sound and accepted methods of protection and principles of insurance. It is empowered and directed to make a complete survey of all presently owned and subsequently acquired state property subject to insurance coverage by any form of insurance, which survey shall include and reflect inspections, appraisals, exposures, fire hazards, construction, and any other objectives or factors affecting or which might affect the insurance protection and coverage required. It shall keep itself currently informed on new and continuing state activities and responsibilities within the insurance coverage herein contemplated. The board shall work closely in cooperation with the state fire marshal's office in applying the rules and regulations of that office insofar as the appropriations and other factors peculiar to state property will permit. The board is given power and authority to make rules and regulations governing its functions and operations and the procurement of state insurance, but shall not make or promulgate any rules or regulations governing the office of insurance commissioner of West Virginia.

The Board is hereby authorized and empowered to negotiate and effect settlement of any and all insurance claims arising on or incident to losses of and damages to state properties, activities and responsibilities hereunder and shall have authority to execute and deliver proper releases of all such claims when settled. The board may adopt rules and procedures for handling, negotiating and settlement of all such claims. All such settlements and releases shall be effected with the knowledge and consent of the attorney general.

6. The original West Virginia Constitution, adopted in 1863, contained no provision addressing the amenability of the State to suit. In 1872, however, art. VI, § 35 was added, providing that, "The State of West Virginia shall never be made defendant in any court of law or equity." The recorded debates and proceedings of the 1872 West Virginia Constitutional Convention are barren of any reference to the precise meaning of this provision. Upon examination of potential antecedents to this provision, however, it becomes clear that art. IV, § 26 of the Illinois Constitution of 1870 served as the prototype for West Virginia's art. VI, § 35. It provided, "The State of Illinois shall never be made defendant in any court of law or equity." The similarities between surrounding provisions of each constitution also support this conclusion. Article VI, §§ 34, 36, and 37 of the West Virginia Constitution of 1872 are nearly identical to article IV, §§ 25, 27, and 28 of the Illinois Constitution of 1870.

Just as in West Virginia, the original Illinois Constitution, adopted in 1818, contained no provision addressing the issue of sovereign immunity. The Illinois Constitution of 1848, however, contained a section which provided, "The general assembly shall direct by law in what manner suits may be brought against the state." Ill. Const. art. III, § 34 (1848). During the Illinois Constitutional Convention of 1869–70, a resolution was offered "[t]hat the following restriction shall be inserted in the Constitution: No law shall be passed by the General Assembly, whereby the State shall be defendant in any court of law or equity." *Debates and Proceedings of the Illinois Constitutional Convention of 1869–70*, p. 175 (January 12, 1870). This resolution was eventually adopted and was incorporated as art. IV, § 26 of the Illinois Constitution of 1870. However, in interpreting this provision, the Illinois Supreme Court has stated,

While this language of the constitution, if construed literally, would absolutely prevent a suit against the State, this court has previously at least intimated that the State could be joined as a defendant in a lawsuit, provided it had expressed its consent thereto by affirmative action of the General Assembly.

*Edelen v. Hogsett*, 44 Ill.2d 215, 217, 254 N.E.2d 435, 437 (1969). *See also J.L. Simmons Co. v.*

In *Tompkins v. Kanawha Board,* 19 W.Va. 257 (1881), this Court discussed for the first time the constitutional immunity from suit granted the State by W.Va. Const. art. VI, § 35. The plaintiff in *Tompkins* sued the Kanawha Board, a governmental corporation charged with keeping the channel of the Kanawha River free from obstacles, for damages occasioned by the sinking of his barge. In defense, the Kanawha Board asserted the State's immunity from suit. The Court held that the defense of constitutional immunity from suit was not available to the state governmental corporation. Justice Johnson, writing for the Court, reasoned:

> It seems to me the test is, was there a corporation created charged with a duty and with rights and franchises incident to corporations, among which is the right to sue, without which the corporation

would be without vitality, and the corresponding liability to be sued, without which it would be a legalized despot trespassing upon the rights of the citizens, who would be powerless to protect themselves. The State creates no such irresponsible entity. The Legislature never intended, that such corporations should be without legal liability, notwithstanding the State owns its property. Would any one doubt for a moment, that if the pilot of a steamer on the Kanawha river should negligently or purposely run into one of the dredge-boats under the control of the Kanawha Board and destroy it, the Kanawha Board could bring suit against the owner of the steamer and compel him to respond in damages? If this be so, and the pilot of the dredge-boat should carelessly or purposely run into the steamer and sink and destroy it,

*Capital Development Bd.,* 98 Ill.App.3d 445, 54 Ill.Dec. 71, 424 N.E.2d 821 (1981); *Crane Paper Stock Co. v. Chicago and Northwestern Ry. Co.,* 63 Ill.2d 61, 344 N.E.2d 461 (1976). This interpretation of constitutional language identical to our own directly conflicts with our sometime holdings that the absolute immunity provided by art. VI, § 35 cannot be waived by the Legislature or the courts. *See Ohio Valley Contractors v. Board of Education,* W.Va., 293 S.E.2d 437 (1982); *City of Morgantown v. Ducker,* 153 W.Va. 121, 168 S.E.2d 298 (1969); *State ex rel. Scott v. Taylor,* 152 W.Va. 151, 160 S.E.2d 146 (1968).

Sovereign immunity of the state is now the exception rather than the rule. It is retained in only eleven jurisdictions: Alabama, Arkansas, Delaware, Georgia, Maryland, North Dakota, Oklahoma, South Dakota, Tennessee, Virginia and West Virginia. *The National Association of Attorneys General, Sovereign Immunity: The Tort Liability of Government and its Officials* 27 n. 29 (1979). The state's immunity has constitutional status in six of these jurisdictions: Alabama, Arkansas, Delaware, North Dakota, Tennessee, and West Virginia. In Delaware, North Dakota and Tennessee, suits may be brought against the state as the legislature may by law direct. *See* Del. Const. art. I, § 9 (1975 & Supp. 1982); N.D. Const. art. I, § 9 (1981 & Supp. 1981); Tenn. Const. art. I, § 17 (1980 & Supp. 1982). Only in Alabama, Arkansas, and West Virginia does the constitutional provision read as an absolute prohibition against suit. *See* Ala. Const. art. I, § 14 (1977 & Supp.1982); Ark. Const. art. 5, § 20 (1947 & Supp.1981); W.Va. Const. art. VI, § 3 (1982 & Supp.1983).

The debates and proceedings of the *Illinois Constitutional Convention of 1869–70, supra* at 961–963, indicate that an original intention of

the constitutional provision granting sovereign immunity was to prevent bondholders of the state from sacking the public treasury. In view of the Legislature's profligate inclination to enact bonding schemes, the repayment of which is inevitably shunted upon the shoulders of prosterity, *see* W.Va. State Treasurer, *Annual Report* at 9 (1982) (The principal bonded indebtedness of the State of West Virginia totalled $1,128,-700,000 as of June 30, 1982, or $5,782.27 for every man, woman and child in West Virginia. *See* U.S.Dept. of Commerce Bureau of Census, *Statistical Abstract of the United States 1982–83* at 12.); *see also* W.Va. Research League, Inc., *The 1982 Statistical Handbook* at 16, this interpretation seems justified.

This interpretation is consistent with our constitutional provision which prohibits the expenditure of money from the treasury in the absence of an appropriation made by the Legislature. W.Va. Const. art. X, § 3. Thus, the argument proceeds that W.Va. Const. art. VI, § 35, is designed to prevent the casting of the State as a defendant in a lawsuit which could result in a judgment against "the State of West Virginia," upon which a successful plaintiff could, in execution of such judgment, invade the public treasury for funds which have not been properly appropriated by the Legislature. Conversely, and to avoid interpretation which would conflict with other constitutional provisions, W.Va. Const. art. VI, § 35 was not intended to immunize corporate bodies created by the Legislature to prosecute public policy, for whom appropriations have been or can be made, and for whom the Legislature has not only authorized, but has further appropriated money for the purchase of liability insurance, *see* W.Va.Code § 29–12–5, as illustrated by this case.

would not an action lie against the Kanawha Board for such damage so inflicted? If not, it is because it was the State of West Virginia, that ran into and sank the steamer and the State cannot be sued. But it was not the State, that did it; it was a creature with corporate powers, capacities, and liabilities, that did it. The State as such does not enter into business of any such character. Her business is political, and when she wants improvements carried on, she creates corporations with the ordinary incidents thereto, to do that business. It would be against all our ideas of State government, if a corporation created by the State to carry on a work of improvement should not be liable like any other corporation for the damage it inflicted, notwithstanding the State might own the property of the corporation. Sovereignty does not reside in such a corporation. The State cannot delegate her sovereignty. There is no creature of the State above the law and irresponsible. If this were so, the corporation might deny to certain individuals all benefits to be conferred by the corporation, and yet it being sovereign or representing sovereignty it could not be sued.

19 W.Va. at 263–264.

The concept that "[t]here is no creature of the State above the law and irresponsible" expressed in *Tompkins* finds its foundation in article III of the West Virginia Constitution, commonly known as our "Bill of Rights." Section one of article III begins with a statement of the inalienable rights which all persons enjoy in a civilized society:

All men are, by nature, equally free and independent, and have certain inherent rights, of which, when they enter into a state of society, they cannot, by any compact, deprive or divest their posterity, namely: the enjoyment of life and liberty, with the means of acquiring and possessing property, and of pursuing and obtaining happiness and safety.

Of particular significance in safeguarding these rights are section 9 of article III, which provides that:

Private property shall not be taken or damaged for public use, without just compensation ... and when private property shall be taken, or damaged, for public use ... the compensation to the owner shall be ascertained in such manner, as may be prescribed by general law; provided, that when required by either of the parties, such compensation shall be ascertained by an impartial jury of twelve freeholders[;]

section 10 of article III, which provides that: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers[;]" and section 17 of article III, which provides: "The courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay."

In the past this Court has stated that the constitutional bar to suit contained in article VI, section 35, is apparently irreconcilable with the fundamental rights of due process and access to the courts guaranteed by article III. *See State ex rel. Phoenix Insurance Co. v. Ritchie*, 154 W.Va. 306, 175 S.E.2d 428 (1970). However, a closer analysis of the scope of the immunity provided by article VI, section 35, indicates that such is not the case. In *Coal & Coke Ry. Co. v. Conley*, 67 W.Va. 129, 67 S.E. 613 (1910), the Court in determining that a suit to enjoin the Attorney General and the Prosecuting Attorney of Kanawha County from enforcing the penal provisions of a legislative enactment was not barred by article VI, section 35, stated:

The state and the government of the state are two different things, the former being an ideal person, intangible, invisible, immutable; the latter a mere agent, and, within the spirit of the agency, a perfect representative, but outside of that, a lawless usurper. *Poindexter v. Greenhow*, 114 U.S. 290, 5 Sup.Ct. 903, 962, 29 L.Ed. 185. The supreme law of the state stands over its government, as well as over the citizen, shielding and protecting both in all their rights. It is an attribute of the state as contradistin-

guished from the state government. It is to the interest of the state, and its duty, to confine its government within the limits of its powers as agent, as well as to restrain the conduct of every citizen in the interest of the general welfare. At the same time, it should protect the government in the exercise of all its functions to the limit thereof, and the citizen in the enjoyment of all rights and privileges guaranteed to him by the supreme law, the Constitution with its limitations upon the powers of the Legislature, the executive and the judiciary, in favor of the citizen. Thus, the humblest citizen, the most powerful corporation, the highest public officers, the greatest state tribunals and functionaries are within the equal protection of the aegis of the Constitution. Therefore it is plain that, in this controversy between one citizen and other citizens, involving the question whether the Legislature, in passing this statute, has violated the Constitution by depriving the complainant of its property without due process of law, or denying it the equal protection of the laws, or whether the defendants have authority to do the threatened acts, the state cannot favor either side. It is just as important that every citizen, regardless of his station in life, be protected in the rights guaranteed to him by the Constitution, as it is that the Legislature be permitted to exercise all of its functions, or that the treasury of the state be supplied with revenue, or that the government be protected in its property rights. On the other hand, to allow the Legislature to violate these constitutional guaranties of individual rights would be equally as subversive of the state's highest and best interests as it would be to permit a citizen to defy the law. The tendency of both is to destroy popular and constitutional government, and the former would be the graver infraction, because always a violation of the organic law, while the latter often amounts to no more than a breach of a mere statute. The Legislature is not the state, and if, breaking over the constitutional limits of its powers, it trample upon the rights of

a citizen, the state shields and protects the latter, treating the act of the former as a form of tyranny. Pure, unsullied, and infallible in legal contemplation, the state can do no wrong. Though her officers and tribunals may, she never sustains nor upholds them in it. On the contrary, she disavows and repudiates their wrongful acts.

67 W.Va. at 142–144, 67 S.E. at 619–620.

In distinguishing between the "State" and the "government of the State," the Court in *Coal & Coke Ry. Co. v. Conley, supra,* relied upon the decision of the United States Supreme Court in *Poindexter v. Greenhow,* 114 U.S. 270, 290, 5 S.Ct. 903, 914, 29 L.Ed. 185 (1885), where in discussing the same distinction, the Court stated:

This distinction is essential to the idea of constitutional government. To deny it or blot it out obliterates the line of demarcation that separates constitutional government from absolutism, free self-government based on the sovereignty of the people, from that despotism, whether of the one or the many, which enables the agent of the State to decare and decree that he is the State; to say *"L'Etat, c'est moi."* Of what avail are written constitutions, whose bills of right for the security of individual liberty have been written, too often, with the blood of martyrs shed upon the battle field and the scaffold, if their limitations and restraints upon power may be overpassed with impunity by the very agencies created and appointed to guard, defend and enforce them; and that, too, with the sacred authority of law, not only compelling obedience, but entitled to respect? And how else can these principles of individual liberty and right be maintained, if, when violated, the judicial tribunals are forbidden to visit penalties upon individual offenders, who are the instruments of wrong, whenever they interpose the shield of the State? The doctrine is not to be tolerated. The whole frame and scheme of the political institutions of this country, State and Federal, protest against it. Their continued existence is not compatible with it.

It is the doctrine of absolutism, pure simple and naked; and of communism, which is its twin; the double progeny of the same evil birth.

114 U.S. at 291, 5 S.Ct. at 914–915, 29 L.Ed. at 192. Under this theory, the "State" as contemplated by the constitution represents the ideal; it is the people united together for their common benefit. *See* W.Va. Const. art. III, § 3. One may not sue the "State" as such, but "whatever wrong is attempted in its name is imputable to its government", which may no more wrong an individual with impunity than may any private person. 114 U.S. at 290, 5 S.Ct. at 914, 29 L.Ed. at 193.

Once the distinction between the State as an "ideal person, intangible, invisible, immutable," and the government of the State as an agent accountable for its wrongful acts is recognized, the asserted irreconcilability of the freedoms guaranteed by article III and the bar to suit contained in article VI, section 35 loses all validity. Indeed, as the Court in *Poindexter* observed: "[The] immunity from suit, secured to the States, is undoubtedly a part of the Constitutional, of equal authority with every other, *but no greater, and to be construed and applied in harmony with all the provisions of that instrument.*" 114 U.S. at 286, 5 S.Ct. at 912, 29 L.Ed. at 191 (emphasis added).

Nevertheless, the later decisions of this Court have not adhered to the distinction recognized in *Coal & Coke Ry Co. v. Conley, supra,* although, in order to avoid problems of irreconcilability, the Court has over the years carved exceptions from the prohibition against suing the "State" contained in article VI, section 35. For example, in *State ex rel. Phoenix Insurance Co. v. Ritchie, supra,* the Court held that mandamus would lie to compel the State Road Commissioner to institute eminent domain proceedings to ascertain the value of property damaged through the negligence of highway construction which caused flooding in the City of Montgomery. Though, in essence, a cause of action for damages caused by negligence, the court granted the writ over the objections of Justices Berry and Calhoun, who argued that the majority's holding, in effect, authorized an indirect suit against the State for damages in violation of W.Va. Const. art. VI, § 35. Justice Browning, writing for the majority, stated:

> Article III, Section 9, of the Constitution of this State provides that "[p]rivate property shall not be taken or damaged for public use, without just compensation . . . ." However, Article VI, Section 35, of the Constitution provides that "[t]he State of West Virginia shall never be made defendant in any court of law or equity . . . ." These constitutional provisions appear to be irreconcilable, but this Court has held that if the State Road Commissioner abuses his discretion in failing to institute an action of eminent domain against a property owner who alleges that his property has been taken or damaged as a result of the construction of a public highway, such commissioner will by this Court be directed in a mandamus proceeding to institute such action to determine whether property has been taken or damaged and, if so, the amount of damage the property owner has suffered.

154 W.Va. at 311–312, 175 S.E.2d at 431 (citation omitted).

In *Stewart v. State Road Comm'n,* 117 W.Va. 352, 185 S.E. 567 (1936), the petitioner in another mandamus proceeding sought to compel payment of a judgment rendered against the State Road Commission for land appropriated for road purposes without purchase or condemnation. The State Road Commission contended that the judgment could not be enforced because, as a state agency, it was constitutionally immune from suit. The Court agreed, but emphasized the other remedies available to the petitioner despite the constitutional prohibition against suing the State:

> Our Constitution, article 6, § 35, provides: "The State of West Virginia shall never be made defendant in any court of law or equity." There is no specific exception to this inhibition. Such a provision is ordinarily construed to be "absolute and unqualified." *Hampton v. State Board,* 90 Fla. 88, 105 So. 323, 42

A.L.R. 1456; *Alabama Industrial School v. Addler,* 144 Ala. 555, 42 So. 116, 113 Am.St.Rep. 58; 25 R.C.L., subject States, § 50. We recognize that the constitutional inhibition against taking private property for a public use without just compensation (article 3, § 9) is of equal dignity with the inhibition against suing the state. If necessary to maintain the rights of a citizen under the former, the two provisions would be construed together and the former treated as an exception to the latter. This has been done in some states. See *Chick Springs Water Co. v. Highway Dept.,* 159 S.C. 481, 157 S.E. 842. Our procedure, however, affords ample protection to one in the position of petitioner without resorting to that necessity. (1) He may enjoin the state road commissioner, and his representatives, personally, from unlawfully invading his property. *Coal & Coke Railway Co. v. Conley,* 67 W.Va. 129, 146, 147, 67 S.E. 613. (2) He may recover damages from the commissioner and his representatives, personally, for unlawfully entering upon and taking his property. The constitutional immunity of the state is not extended to its officials and their representatives in the performance of an unlawful act. *Coal & Coke Railway Co. v. Conley,* supra. (3) He may mandamus the commissioner in person, to condemn his land. *Draper v. Anderson,* 102 W.Va. 633, 135 S.E. 837....

We are aware that when the Legislature has established a corporate entity and provided it with funds to conduct an enterprise for the state, some jurisdictions with constitutional provisions similar to ours have held that the entity is separate from the state and is subject to suit. See *State v. Bates,* 317 Mo. 696, 296 S.W. 418; *Arkansas Commission v. Dodge,* 181 Ark. 539, 26 S.W.(2d) 879, 885. But as was remarked by the Arkansas court: "This is a question which each state must decide for itself." We have long been committed to the opposite view. *Miller v. State Board* (1899) 46 W.Va. 192, 32 S.E. 1007, 76 Am.St.Rep. 811; *Miller Supply Co. v. Board of Con-*

*trol,* 72 W.Va. 524, 78 S.E. 672; *Mahone v. Road Commission,* 99 W.Va. 397, 129 S.E. 320.

117 W.Va. at 353–354, 185 S.E. at 567–568.

In similar fashion, the Court has determined that a variety of other actions in which the State or its officers are named as defendants fall outside the bounds of the constitutional prohibition against suing the State. For example, an injunction to restrain or require a state officer to perform a ministerial duty is not prohibited, *Chesapeake & Ohio Railway Co. v. Miller,* 19 W.Va. 408 (1882), *aff'd,* 114 U.S. 176, 5 S.Ct. 813, 29 L.Ed. 121 (1885); *State ex rel. W.H. Wheeler & Co. v. Shawkey,* 80 W.Va. 638, 93 S.E. 759 (1917); *Fidelity & Deposit Co. v. Shaid,* 103 W.Va. 432, 137 S.E. 878 (1927); *State ex rel. Printing-Litho, Inc. v. Wilson,* 147 W.Va. 415, 128 S.E.2d 449 (1962); suits against officers, acting, or threatening to act, under allegedly unconstitutional statutes, have been held not to be suits against the State, *Blue Jacket Consolidated Copper Co. v. Scherr,* 50 W.Va. 533, 40 S.E. 514 (1901); *Coal & Coke Railway Co. v. Conley, supra; Hamill v. Koontz,* 134 W.Va. 439, 59 S.E.2d 879 (1950); *see also Pauley v. Kelly,* 162 W.Va. 672, 255 S.E.2d 859 (1979); *Ables v. Mooney,* 164 W.Va. 19, 264 S.E.2d 424 (1979); recognition of a "moral obligation" by the State may be discharged by the appropriation of public funds to private individuals, *State ex rel. Davis Trust Co. v. Sims,* 130 W.Va. 623, 46 S.E.2d 90 (1947); *Price v. Sims,* 134 W.Va. 173, 58 S.E.2d 657 (1950); *State ex rel. Bumgarner v. Sims,* 139 W.Va. 92, 79 S.E.2d 277 (1953); suits for declaratory judgment have been held not to be suits against the State, *Douglass v. Koontz,* 137 W.Va. 345, 71 S.E.2d 319 (1952); *Farley v. Graney,* 146 W.Va. 22, 119 S.E.2d 833 (1960); mandamus has been permitted to require the state road commission to institute proper condemnation proceedings upon the taking or damaging of land for public purposes, *Hardy v. Simpson,* 118 W.Va. 440, 190 S.E. 680 (1937); *Riggs v. Commissioner,* 120 W.Va. 298, 197 S.E. 813 (1938); *Childers v. Road Commissioner,* 124 W.Va. 233,

19 S.E.2d 611 (1942); *Newman v. Bailey*, 124 W.Va. 705, 22 S.E.2d 280 (1942); *Doss v. City of Mullens*, 133 W.Va. 351, 56 S.E.2d 97 (1949); *Taylor v. Baltimore & Ohio Railroad Co.*, 138 W.Va. 313, 75 S.E.2d 858 (1953); *State ex rel. French v. State Road Commission*, 147 W.Va. 619, 129 S.E.2d 831 (1963); *State ex rel. Phoenix Ins. Co. v. Ritchie, supra; State ex rel. Rhodes v. West Virginia Department of Highways*, 155 W.Va. 735, 187 S.E.2d 218 (1972); liability arising from the performance of proprietary functions is not immunized, *Ward v. County Court*, 141 W.Va. 730, 93 S.E.2d 44 (1956); *Whitney v. Ralph Myers Contracting Corp.*, 146 W.Va. 130, 118 S.E.2d 622 (1961); *Kondos v. Board of Regents*, 318 F.Supp. 394 (S.D. W.Va.1970), *aff'd*, 441 F.2d 1172 (4th Cir. 1971); quasi-public corporations which have no taxing power or dependency upon the State for their financial support have been held not to be afforded any immunity, *Hope Natural Gas Co. v. West Virginia Turnpike Commission*, 143 W.Va. 913, 105 S.E.2d 630 (1958); *Christo v. Dotson*, 151 W.Va. 696, 155 S.E.2d 571 (1967); *State ex rel. C & D Equipment Co. v. Gainer*, 154 W.Va. 83, 174 S.E.2d 729 (1970); and, finally, mandamus may be employed to compel state officers, who have acted arbitrarily, capriciously, or outside the law, to perform their lawful duties. *State ex rel. Ritchie v. Triplett*, 160 W.Va. 599, 236 S.E.2d 474 (1977).[7]

Our constitution clearly contemplates that every person who is damaged in his person, property, or reputation shall have recourse to the courts to seek the redress of his injuries. *See* W.Va. Const. art. III, §§ 9, 10, 17. *See generally Cooper v. Gwinn*, 171 W.Va. 245, 298 S.E.2d 781, 786 (1981). The fact that the wrongdoer is an instrumentality of state government should not eviscerate these constitutional rights, inasmuch as the Bill of Rights contained in article III is designed to protect people from government. Moreover, one's constitutional right to access to the courts should not depend upon whether one seeks recourse for injuries attributable to a governmental agency by way of a cause of action sounding in tort, or by way of a mandamus to compel compensation for the damaging of private property.[8] *Compare Mahone v. State Road Comm'n*, 99 W.Va. 397, 129 S.E. 320 (1925), *with State ex rel. Phoenix Insurance Co. v. Ritchie, supra.* It is anomalous, indeed, that our constitution protects property which is damaged, for example, through the negligence of the State Road Commission in the course of constructing a roadway, *see State ex rel. Phoenix Insurance Co. v. Ritchie, supra,* but would not protect the life and limbs of a person negligently run down by a truck driven by an employee of the State Road Commission during construction of the same roadway. *See* Syllabus Point 1, *Mahone v. State Road Comm'n, supra.* ("The state road commission of West Virginia is a direct governmental agency of the state, and as such is not subject to an action for tort.") Undeniably, problems of equal protection are present in such a situation.[9]

Nevertheless, the Court has intermittently adhered to the position that bona fide state agencies are immune from damage suits pursuant to W.Va. Const. art. VI,

---

**7.** The Legislature has also sought to ameliorate the harshness of the constitutional bar to suits against the State by creation of the Court of Claims, which is authorized to consider and approve claims against the State not otherwise cognizable in the regular courts of the State, and to recommend an award to the Legislature. *See* W.Va.Code §§ 14-2-1 *et seq.* (1979 Replacement Vol.). However, the recommendation of the Court of Claims is not binding on the Legislature, which may accept or reject the court's findings and approve or disapprove its recommendations. *See, e.g., State ex rel. Stollings v. Gainer*, 153 W.Va. 484, 170 S.E.2d 817 (1969).

Accordingly, this legislative creation may do little to dispel the due process objections surrounding W.Va. Const. art. VI, § 35.

**8.** *Quaere* whether all injuries attributable to the negligence of a governmental agency are damages to "private property" for which compensation must be provided pursuant to W.Va. Const. art. III, § 9.

**9.** *See State ex rel. Piccirillo v. City of Follansbee*, 160 W.Va. 329, 233 S.E.2d 419 (1977), for a discussion of the equal protection clause inherent in W.Va. Const. art. III, § 17.

§ 35.[10] Thus, despite the fact that the West Virginia Board of Regents is a statutorily created corporation upon which the Legislature has specifically bestowed the ability "to sue and be sued," W.Va.Code § 18–26–3 (1977 Replacement Vol.), the Court held in *City of Morgantown v. Ducker,* 153 W.Va. 121, 168 S.E.2d 298 (1969), that the Board is a state agency which is constitutionally immune from suit under W.Va. Const. art. VI, § 35. *See also Ohio Valley Contractors v. Board of Education, supra; State ex rel. Scott v. Taylor,* 152 W.Va. 151, 160 S.E.2d 146 (1968); *Hughes-Bechtol, Inc. v. West Virginia Board of Regents,* 527 F.Supp. 1366 (S.D. Ohio 1981); *Santiago v. Clark,* 444 F.Supp. 1077 (N.D.W.Va.1978); *Kondos v. West Virginia Board of Regents,* 318 F.Supp. 394 (S.D.W.Va.1970), *aff'd,* 441 F.2d 1172 (4th Cir.1971).[11]

The appellant accepts *City of Morgantown v. Ducker, supra,* as a proper statement of law for purposes of this appeal. Consequently, we are not required to address the apparent inconsistencies between the rights safeguarded by article III of the West Virginia Constitution and prior decisions interpreting the scope of the immunity from suit granted the State by article VI, section 35, although upon close examination it appears the case for immunity may have been overstated therein. Rather, the appellant requests that we examine the effect of the legislatively authorized procurement of liability insurance by a state agency upon the otherwise applicable constitutional bar to suit.

Both the appellant and the appellee advance the contention that where recovery is sought against the State's liability insurance coverage, the constitutional bar to suit should not apply. Similar arguments have been made in previous West Virginia cases. In *Boice v. Board of Education,* 111 W.Va. 95, 160 S.E. 566 (1931), the plaintiff sought to enjoin a county board of education from setting up the defense of governmental immunity to her personal injury claim, and to recover damages from the board's insurance company. The plaintiff conceded that under existing law the board was ordinarily immune from suit, but argued that by procuring liability insurance the board had waived its immunity and had created a fund, in the nature of a trust, for the protection and benefit of the plaintiff and others. The Court rejected the plaintiff's argument, reasoning that the board could not waive the immunity granted by the Legislature. The Court also found the insurer's legal obligation to be derivative in nature, and therefore, denied the plaintiff's request to proceed directly against the insurer: "Under the terms of the insurance policy the insurer is not liable directly to a claimant until after recovery of judgment by the claimant against the insured. This plaintiff, therefore, cannot proceed in advance of such a judgment, directly against the insurance company." 111 W.Va. at 96, 160 S.E. at 567 (citation omitted). *See also Utz v. Board of Education,* 126 W.Va. 823, 30 S.E.2d 342 (1944) (statute authorizing board of education to provide insurance for negligence of drivers of school busses does not abolish the board's immunity from suit); *Board of Education v. Commercial Casualty Insurance Co.,* 116 W.Va. 503, 182 S.E. 87 (1935) (board of education cannot, by acquisition of indemnity insurance,

---

**10.** Factors which the Court considers in determining whether an entity is a state agency entitled to constitutional immunity include: (1) whether the entity functions statewide, *Hesse v. State Soil Conservation Committee,* 153 W.Va. 111, 168 S.E.2d 293 (1969); (2) whether the entity performs the work of the State, *City of Morgantown v. Ducker,* 153 W.Va. 121, 168 S.E.2d 298 (1969); (3) whether the entity was created by the Legislature, *Woodford v. Glenville State College Housing Corp.,* 159 W.Va. 442, 225 S.E.2d 671 (1976); (4) whether it is subject to local control, *Hess v. State Soil Conservation Committee, supra;* and (5) whether it is financially dependent on State coffers, *Boggs v. Board of Education of Clay County,* W.Va., 244 S.E.2d 799 (1978). *See Ohio Valley Contractors v. Board of Education,* 170 W.Va. 240, 293 S.E.2d 437, 438 (1982).

**11.** *But see Clark v. West Virginia Board of Regents,* 166 W.Va. 702, 279 S.E.2d 169 (1981); *State ex rel. McLendon v. Morton,* 162 W.Va. 431, 249 S.E.2d 919 (1978); and *North v. West Virginia Board of Regents,* 160 W.Va. 248, 233 S.E.2d 411 (1977), cases involving the Board of Regents in which the question of constitutional immunity from suit is neither raised nor discussed.

or otherwise, change its status as a governmental agency, and thus, waive its immunity).

In accord with *Boice* is *Bradfield v. Board of Education*, 128 W.Va. 228, 36 S.E.2d 512 (1945), where the plaintiff argued that the board of education could be proceeded against solely to establish the amount of liability of the board's insurance carrier, regardless of whether such amount can or cannot be collected out of school funds. The Court rejected the plaintiff's argument, stating:

> This position is unsound. It would be an anomaly to permit a recovery in any amount, the basis for which the law denies and the collection of which the law forbids. The entry of such a judgment, not legally enforcible merely for the purpose of measuring or fixing the amount of the liability of a third person who is not even a party to the action, should not receive judicial sanction.

128 W.Va. at 234, 36 S.E.2d at 515.

■ However, both *Boice* and *Bradfield* were decided prior to enactment of W.Va. Code § 29–12–5, which authorizes the Board of Insurance to procure liability insurance on behalf of the State, and which further prohibits the insurer from whom a policy has been purchased from relying upon the constitutional immunity of the State against claims or suits.[12] In light of this statutory prohibition, we conclude that a suit seeking recovery against the State's insurance carrier is outside the bounds of the constitutional bar to suit contained in W.Va. Const. art. VI, § 35.

In determining the validity of a claim of constitutional immunity this Court has in the past looked behind the formal parties in a suit in order to assess the suit's impact on the State. *See Ables v. Mooney, supra. See also Woodford v. Glenville State Housing Corp., supra.* The paramount justification underlying the constitutional grant of immunity is to protect the financial structure of the State.[13] *See, e.g., State v. Ruthbell Coal Co.,* 133 W.Va. 319, 56 S.E.2d 549 (1949). Thus, in *City of Morgantown v. Ducker, supra,* the Court held the plaintiff's claim against the Board of Governors of West Virginia University, predecessor to the Board of Regents, to be barred because:

> The judgment which the plaintiff would seek in a suit against the board of governors, if satisfied, would be paid from funds in the treasury of the state. The interest of the state would be directly affected and involved in any suit to collect the claim against the board of governors with respect to funds belonging to and in the custody of the state.

153 W.Va. at 131, 168 S.E.2d at 304. Accordingly, it is reasonable to conclude that suits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the State's liability insurance coverage fall outside the traditional constitutional bar to suits against the State. *Cf. City of Kingsport v. Lane,* 35 Tenn.App. 183, 243 S.W.2d 289 (1951). The Legislature has not, by enactment of W.Va.Code § 29–12–5, sought to waive the State's constitutional immunity from suit. Rather, we read the statute as the Legislature's recognition of the fact that where recovery is sought against the State's liability insurance coverage, the doctrine of constitutional immunity, designed to protect the public purse, is simply inapplicable. As this Court recently stated in *Gooden v. County Comm'n of Webster County,* 171 W.Va. 130, 298 S.E.2d 103, 105 (1982): "Where liability insurance is present, the reasons for immunity completely disappear."

In the usual policy for liability insurance, the insurer retains the right of exclusive control over litigation against the insured based on claims covered by the policy. *See*

---

12. See footnote 5, *supra.*

13. Traditionally, two criterion have been advanced for a grant of constitutional immunity—financial and functional. The functional criteria distinguishes between "governmental" and "proprietary" functions. *See* Note, *Torts-Gov-* ernmental Immunity in West Virginia-Long live the King?, 76 W.Va.L.Rev. 543 (1978). The court abandoned such distinctions as unworkable in the context of common-law governmental immunity in *Long v. City of Weirton,* 158 W.Va. 741, 214 S.E.2d 832 (1975). *See also Ohio Valley Contractors v. Board of Education, supra.*

44 Am.Jur.2d, *Insurance,* § 1393 (1982) and cases cited therein. Concomitant with this right is the requirement that the insurer defend the insured against all actions in which the complaint alleges facts which come within the coverage of the liability policy. *Id.* at §§ 1405, 1409. Such a duty to defend on the part of the insurer is clearly contemplated by W.Va.Code § 29–12–5. Otherwise, the statutory prohibition which bars and estops the insurer from relying upon the State's constitutional immunity against claims or suits would be meaningless.

▆▆▆ Where a cause of action is, in essence, a suit against a state agency's insurance carrier, the justification for applying the exclusive venue provisions of W.Va.Code § 14–2–2 evaporates. In *Davis v. West Virginia Bridge Commission,* 113 W.Va. 110, 113, 166 S.E. 819, 821 (1932), the Court stated that the "manifest purpose" of exclusive venue statutes such as W.Va.Code § 14–2–2, "is to prevent the great inconvenience and possible public detriment that would attend if functionaries of the state government should be required to defend official conduct and [the] state's property interests in sections of the commonwealth [*sic*] remote from the capital." Thus, where the real party in interest is the insurance carrier which is obliged to defend the action brought against the Board of Regents, there is no rational justification for application of W.Va.Code § 14–2–2.

▆▆▆ Nevertheless, the appellee, relying upon *Thomas v. Board of Education,* 167 W.Va. 911, 280 S.E.2d 816 (1981), argues that the exclusive venue provision of W.Va.Code § 14–2–2 is mandatory. In *Thomas,* non-teaching employees of the McDowell County school system brought an action in the Circuit Court of McDowell County against the county board of education for supplemental pay which had been collected pursuant to a special levy but which the board had not paid. The

county board of education filed a third-party complaint naming the State Board of Education as a third-party defendant. On a certified question this Court held, *inter alia,* that the Circuit Court of McDowell County lacked jurisdiction over the third-party complaint against the State Board of Education because pursuant to W.Va.Code § 14–2–2, such complaint could only be brought in the Circuit Court of Kanawha County.[14] However, *Thomas* did not involve an action wherein recovery was sought against a state agency's insurance carrier, nor did the decision address the underlying purpose of the exclusive venue provisions of W.Va.Code § 14–2–2. Thus, *Thomas* is of little use in resolving the issue raised in the case at bar. We therefore hold that the exclusive venue provision of W.Va.Code § 14–2–2 is not applicable to a cause of action wherein recovery is sought against the liability insurance coverage of a state agency. In such circumstances, the question of proper venue should be resolved without regard to W.Va. Code § 14–2–2. Generally, venue for a cause of action lies in the county wherein the cause of action arose or in the county where the defendant resides. *See Hesse v. State Soil Conservation Committee,* 153 W.Va. 111, 168 S.E.2d 293 (1969); W.Va. Code §§ 56–1–1, –2 (1966). Accordingly, in the instant case, venue is proper in the Circuit Court of Monongalia County.[15]

For the foregoing reasons, we reverse the order of the Circuit Court of Monongalia County granting the appellee's motion to dismiss the appellant's complaint for improper venue, and remand this case for further proceedings consistent with this opinion.

Reversed and remanded.

NEELY, Justice, concurring in part and dissenting in part:

Although I agree with the narrow result in this case, I must disassociate myself

---

14. Syllabus point two of *Thomas* provides: "Actions wherein a state agency or official is named, whether as principal party of third-party defendant, may be brought only in the Circuit Court of Kanawha County."

15. Our disposition of the case on this issue renders unnecessary a discussion of whether the lower court abused its discretion in refusing to transfer the proceedings to the Circuit Court of Kanawha County.

from an opinion that pretends to answer questions that this Court has not been asked. Ordinarily a dissent to dicta is like the sound of one hand clapping; however, when an opinion attempts to stretch dicta into a definitive statement of law, such a frolic and detour is dangerous and requires a response. The danger of undisciplined dicta is that lawyers and *nisi prius* judges may take it seriously. Improvident dicta may skew settlement negotiations for years before a party with sufficient assets begs this Court to "reconsider" a ruling which in reality it never rendered. Therefore, law must be written with care. It is meant to be an exercise of the mind, not a venting of the spleen.

There is nothing "specious" about the "tenet of law that state agencies are immune to suit under *W. Va. Const.* art. VI, § 35." Majority opinion at p. 680. Although this Court has carved exceptions to art. VI, § 35, such as permitting mandamus to compel the State to condemn when property has been taken, these exceptions are within the original intent of the constitutional framers. The purpose of art. VI, § 35 is to protect the treasury of the State from a wholesale invasion that would divert money from legislatively appropriated purposes to the payment of court awards.

In the case before us, the State has waived the immunity granted by art. VI, § 35 by purchasing an insurance policy under a statute, *Code,* 29–12–5 [1957] that explicitly forbids the insurance carrier from asserting the defense of sovereign immunity in suits within the coverage limits. The State, through her legislature, has chosen therefore to protect persons injured on State property through insurance. Court awards for this class of protected persons are the result of a conscious legislative decision to allocate a fixed amount of money for the protection of tort victims. That decision does not mean that the legislature could not have properly chosen to rely on sovereign immunity in such cases and to expend limited state funds for other purposes.

The exclusive venue provision of *W. Va. Code,* 14–2–2 [1976] that requires actions against the State or her officials to be brought at the seat of government is designed to protect state officials from vexatious litigation in counties far distant from their daily duties. The suit under consideration here, however, is not against the State or its officers but rather against an insurance carrier. Protection of the carrier from jury prejudice determines that the carrier not be named as a party; nonetheless, the fiction of the caption does not change the underlying nature of the suit.

Because the action is not against the State, it stands to reason that no policy goal of *Code,* 14–2–2 [1976] is served by limiting venue to Kanawha County. In fact, the exact opposite is the case; if the exclusive venue statute were applied in a circumstance such as this where it was not intended to apply, legislative policy would be confounded. By authorizing insurance for State agencies in *Code,* 29–12–5 [1952], and waiving art. VI § 35 immunity up to the coverage limits, the Legislature obviously intended to place victims of State torts on a par with victims of private torts. If we interpret *Code,* 14–2–2 [1976] to apply in cases like the one before us, we would create a significant obstacle to the parity the legislature sought to create between tort victims.

That is all there is to this case; but it is not all there is to the majority opinion. Apparently, the author of the majority opinion did not agree with the drafters of our State Constitution who believed sovereign immunity was necessary to protect the state coffers. Some reasonable men might even agree. Neither the existence of his opinion nor even its correctness, however, can erase the words from the page. That is the essence of constitutional government, government by law and not men. If judges are not mindful of that restraint, who will be?

Like much of the law, today's case requires us to fit a square peg into a round hole. The fit is not perfect; but our solution appears rational, and given the overall legislative intent does no violence to any constitutional or legislative policy. I vigorously dissent, however, to any implication

in the majority opinion that art. VI, § 35 does not protect the State from suit, and dissent even more vigorously to the further implication that this Court, sworn as we are to uphold the Constitution of the *State of West Virginia,* and bounded as we are by the limits of human rationality, would hold a State constitutional provision unconstitutional under the State *Constitution.*

MILLER, Justice, concurring:

I concur with the ultimate result in this case that W.Va.Code, 29–12–5, is not invalid as waiving the State's constitutional immunity.[1] However, I believe that the majority may have raised some false hopes in its lengthy discussion of "the specious tenet of law that state agencies are immune from suit under W.Va. Const. art. VI, § 35." (Majority Opinion, p. 680) I do not believe that we can nullify a constitutional command. I recognize that a number of state courts have abandoned their common law or court-created doctrine of sovereign immunity. This is understandable and part of the continual process of court development and modification of common law principles to meet the changing needs of society. *See Morningstar v. Black & Decker Manufacturing Company,* 162 W.Va. 857, 253 S.E.2d 666 (1979).[2] I am aware, however, of no court which has judicially abolished sovereign immunity set by its constitution.

Our constitutional immunity barring suits against the State is as firmly embedded in our law as its counterpart, the Eleventh Amendment, is in the federal law. This amendment prohibits federal courts from entertaining suits brought by citizens against any state[3] and its principles were recently summarized in *Florida Dept. of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 684, 689, 102 S.Ct. 3304, 3314, 3317, 73 L.Ed.2d 1057, 1068, 1072 (1982):

"A suit generally may not be maintained directly against the State itself, or against an agency or department of the State, unless the State has waived its sovereign immunity. *Alabama v. Pugh,* 438 U.S. 781, 57 L.Ed.2d 1114, 98 S.Ct. 3057. If the State is named directly in the complaint and has not consented to the suit, it must be dismissed from the action. *Id.,* at 782, 57 L.Ed.2d 1114, 98 S.Ct. 3057....

"The Eleventh Amendment does not bar all claims against officers of the State, even when directed to actions taken in their official capacity and defended by the most senior legal officers in the executive branch of the state government....

\* \* \* \* \* \*

"These cases make clear that the Eleventh Amendment does not bar an action against a state official that is based on a theory that the officer acted beyond the scope of his statutory authority or, if within that authority, that such authority is unconstitutional. In such an action, however, the Amendment places a limit on the relief that may be obtained by the plaintiff. If the action is allowed to proceed against the officer only because he acted without proper authority, the judgment may not compel the State to use its funds to compensate the plaintiff for the injury." (Footnotes omitted)[4]

---

1. In the few other states where similar statutes exist, their courts have rather uniformly upheld such statutes. *E.g., Pajewski v. Perry,* 363 A.2d 429 (Del.1976); *Pigg v. Brockman,* 79 Idaho 233, 314 P.2d 609 (1957).

2. We, along with other courts, have abolished common law immunity for a variety of local governmental units which did not have the benefit of the state's constitutional immunity. *E.g., Gooden v. County Commission of Webster County,* 171 W.Va. 130, 298 S.E.2d 103 (1982); *Ohio Valley Contractors v. Board of Education of Wetzel County,* 170 W.Va. 240, 293 S.E.2d 437 (1982); *Long v. City of Weirton,* 158 W.Va. 741, 214 S.E.2d 832 (1975).

3. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

4. In note 17 of *Florida Dept. of State v. Treasure Salvors, Inc.,* 458 U.S. at 683, 102 S.Ct. at 3314, 73 L.Ed.2d at 1068, the United States Supreme Court stated:

"Although the Amendment does not literally apply to actions brought against a State by its own citizens, the Amendment long has been held to govern such actions. *Hans v. Louisiana,* 134 U.S. 1, 33 L.Ed. 842, 10 S.Ct. 504.

Our treatment of state sovereign immunity is rather similar in that while we recognize that the State or its agencies are not subject to suit, *Ohio Valley Contractors v. Board of Education of Wetzel County*, 170 W.Va. 240, 293 S.E.2d 437 (1982), in certain instances state officials may be sued, *Ables v. Mooney*, 164 W.Va. 19, 264 S.E.2d 424 (1979).[5] We have also limited sovereign immunity to those agencies actually performing direct state functions utilizing state revenues. *E.g., Woodford v. Glenville State College Housing Corp.*, 159 W.Va. 442, 225 S.E.2d 671 (1976).

The majority quotes extensively from *Tompkins v. Kanawha Board*, 19 W.Va. 257 (1881), and suggests it will support the erosion of sovereign immunity. I do not agree. It must be remembered that the defendant in *Tompkins* involved a public corporation created by a legislative act charged with certain responsibilities over the navigability of the Kanawha River. It was not under the direct control of the State and apparently received its funds from tolls. This Court held it was not immune from suit. We adopted the same view in regard to the West Virginia Turnpike Commission in *Hope Natural Gas Co. v. West Virginia Turnpike Commission*, 143 W.Va. 913, 105 S.E.2d 630 (1959).

Furthermore, I do not subscribe to the majority's inference that the following provisions from Article III of the Constitution of West Virginia, *viz.*, Section 1 (life, liberty, and pursuit of happiness); Section 9 (eminent domain); Section 10 (the due process clause), or Section 17 (open courts), might be read individually or collectively to supersede the sovereign immunity section.

This Court traced the history of the open courts provision of Section 17 of Article III in *McHenry v. Humes*, 112 W.Va. 432, 164 S.E. 501 (1932). *See also State ex rel. Herald Mail Company v. Hamilton*, 165 W.Va. 103, 267 S.E.2d 544 (1980). More recently, we discussed the genealogy of the due process clause in *Markey v. Wachtel*, 164 W.Va. 45, 264 S.E.2d 437 (1979). The majority's reference in the present case to our eminent domain and general life, liberty, and pursuit of happiness provisions of our Constitution are a bit mystifying to me. In any event, I find nothing in any of the historical antecedents of these provisions which would cause me to conclude that they warrant abolishing the concept of sovereign immunity which is embodied in Section 35 of Article VI of our Constitution.

Finally, I should note a matter which is

See *Employees v. Missouri Public Health Dept.*, 411 U.S. 279, 280, 36 L.Ed.2d 251, 93 S.Ct. 1614, 1615; *Edelman v. Jordan*, 415 U.S. 651, 662, 39 L.Ed.2d 662, 94 S.Ct. 1347, 1355. Nor does the Amendment literally apply to proceedings in admiralty. Again, however, the Court has found it to govern certain admiralty actions. See *In re New York*, 256 U.S. 490, 500, 65 L.Ed. 1057, 41 S.Ct. 588, 590."

While *Florida Dept. of State v. Treasure Salvors, Inc., supra,* was a plurality opinion, it is clear that the main dissent authored by Justice White and joined by Justices Powell, Rehnquist and O'Connor did not disagree as to the legal principles surrounding the Eleventh Amendment but as to their applicability under the facts.

5. Syllabus Points 1 and 2 of *Ables v. Mooney, supra,* state:

"1. 'State officers who, under the color of the authority of unconstitutional state legislation, are guilty of personal trespasses and wrongs, may be sued, although the Constitution of this State provides that the State shall never be made defendant in any suit at law or in equity; and suits may be maintained

against such officers in their official capacity, to arrest or direct their official action, by injunction or *mandamus,* when said suits are authorized by law, and the act to be done or omitted is purely ministerial, in the performance or omission of which the plaintiff has a legal interest; but in other cases such suit cannot be maintained when such officer is only a nominal party, for such suit is then tantamount to a suit against the State.' [Emphasis in original] Syllabus Point 3, *Blue Jacket Consolidated Copper Co. v. Scherr*, 50 W.Va. 533, 40 S.E. 514 (1901).

"2. In certain instances a suit may be maintained against a State official in his individual capacity, notwithstanding the constitutional immunity provision found in Article VI, Section 35 of the West Virginia Constitution, where the relief sought involves a prospective declaration of the parties' rights. However, where the relief sought involves an attempt to obtain a retroactive monetary recovery against the official based on his prior acts and which recovery is payable from State funds, the constitutional immunity provision bars such relief."

implicit in Syllabus Point 2 of the opinion.[6] There may be occasions when the amount sued for may be in excess of applicable policy limits, or there may be deductible clauses that in effect require the State to assume some portion of a final judgment. In these situations, I would have no doubt that the State's sovereign immunity would apply and to this extent the trial court would permit utilization of the immunity.

---

**6.** Syllabus Point 2 states: "Suits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the State's liability insurance coverage, fall outside the traditional constitutional bar to suits against the State."