511 S.E.2d 152

Bobby Z. JEFFREY, as Personal Representative of the Estate of Karen Jean Jeffrey, Plaintiff Below, Appellant,

v.

WEST VIRGINIA DEPARTMENT OF PUBLIC SAFETY, DIVISION OF CORRECTIONS; Donald Ervin, Individually and in His Official Capacity as Director of the Charleston Work Release Center; Debbie Cottrell, Individually and in Her Official Capacity as a Counselor at the Huttonsville Correctional Facility, Billy Joe Hottle and Craig S. Swick, Defendants Below, Appellees.

Hoover Miller, Administrator and Personal Representative of the Estate of Leon F. Miller, Deceased, Plaintiff Below, Appellant,

v.

State of West Virginia, Division of Corrections, Nicholas J. Hun, Commissioner, Division of Corrections; Lary M. Garrett, Guardian Ad Litem of Craig S. Swick; and Timothy M. Sirk, Guardian Ad Litem of Billy Joe Hottle, Defendants Below, Appellees.

No. 25052, 25173.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 1998.

Decided Dec. 11, 1998.

Daniel R. James, F. Cody Pancake, III, Barr & James, Keyser, West Virginia, P.

Rodney Jackson, Lonnie C. Simmons, Charleston, West Virginia, Attorneys for the Appellant (Case No. 25052).

Daniel C. Staggers, Staggers & Staggers, Martinsburg, John W. Cooper, Cooper & Preston, Parsons, West Virginia, for Appellant (Case No. 25173).

David P. Cleek, Dwayne J. Adkins, Shuman, Annand & Poe, Charleston, West Virginia, Attorneys for West Virginia Department of Public Safety, Division of Corrections, Donald Ervin and Debbie Cottrell.

Daniel C. Cooper, Steptoe & Johnson, Clarksburg, West Virginia, Attorney for State of West Virginia, Division of Corrections.

Timothy M. Sirk, Keyser, West Virginia, Guardian Ad Litem for Billy Joe Hottle.

Lary D. Garrett, Garrett & Garrett, Moorefield, West Virginia, Guardian Ad Litem for Craig S. Swick.

PER CURIAM:

These two cases involve essentially the same question, that is, whether the appellants, whose decedents were murdered as a result of the potential negligence of the appellees, may maintain actions against the appellees, in spite of the fact that the appellees were agents, officers, or employees of the State of West Virginia, and were acting in official capacities at the time of their potential negligence. The circuit courts concluded that the appellants could not maintain the actions because of the "Public Duty Doctrine." Consequently, the circuit courts dismissed the actions.

### FACTUAL BACKGROUND

These cases are related to, and are a sequel to this Court's decision in *Jeffrey v. West Virginia Department of Public Safety, Division of Corrections,* 198 W.Va. 609, 482 S.E.2d 226 (1997) (hereinafter referred to as *Jeffrey I*). As was explained in *Jeffrey I,* Billie Joe Hottle and Craig Swick had been convicted of grand larceny. They had been committed to the care and custody of the appellee, West Virginia Department of Public Safety, Division of Corrections. Mr. Hottle had been confined in the Huttonsville Cor-

rectional Center. Mr. Swick, who was Mr. Hottle's first cousin, had been committed to the Charleston Work Release Center. While confined in the Huttonsville Correctional Center, Mr. Hottle corresponded with Mr. Swick. They had plotted revenge and had drafted a document entitled "Global Federation Operations Manual for the Operation Strike" in which Mr. Hottle detailed plans for killing and injuring certain people, destroying property, and engaging in other illegal activities. This document came to the attention of certain officials of the Department of Public Safety. Parts of the document were subsequently shredded by an employee of the Department of Public Safety.

On August 5, 1993, Mr. Hottle escaped from Huttonsville Correctional Center. While he was still loose, despite the fact that the Department of Public Safety was aware of his escape, and despite concerns that Mr. Swick might attempt to contact him, Mr. Swick was given a pass from the Charleston Work Release Center on August 15, 1993. Mr. Swick, then did, in fact, contact Mr. Hottle. The two of them subsequently murdered the appellants' decedents, Karen Jean Jeffrey and Leon F. Miller.

After the murders, Mrs. Jeffrey's husband, the appellant, Bobby Z. Jeffrey, and Mr. Miller's administrator, brought wrongful death actions against the West Virginia Department of Public Safety, Division of Corrections, and the other appellees. In their complaints, they claimed that the West Virginia Department of Public Safety and the other appellees owed Mrs. Jeffrey and Mr. Miller a special duty to exercise reasonable care in controlling Mr. Hottle and Mr. Swick. The complaint also alleged that they had breached that duty. The Circuit Court of Kanawha County and the Circuit Court of Grant County dismissed the actions on the ground that appellants were precluded from prosecuting them by the "Public Duty Doctrine."

As we explained in *Parkulo v. West Virginia Board of Probation and Parole,* 199 W.Va. 161, 483 S.E.2d 507 (1996), the "Public Duty Doctrine" is a doctrine which, independent of the constitutional doctrine of governmental immunity, holds in its common law

form, that ordinarily a recovery for negligence may be had against the State or governmental agent, officer, or employee, acting in a non-fraudulent, non-malicious, or non-oppressive manner, only if the duty which was negligently breached was owed to the particular person seeking recovery. In *Parkulo* the Court also recognized that the Legislature has implicitly altered the common law form "Public Duty Doctrine" by authorizing the State to purchase insurance to cover certain actions that otherwise would be precluded by the doctrine and by authorizing the State, in the procuring of such insurance, to waive or alter the "Public Duty Doctrine."

After the Circuit Court of Kanawha County dismissed *Jeffrey I,* we, on appeal, found that Mr. Jeffrey was, in fact, precluded from maintaining his action by the "Public Duty Doctrine" unless he could show that the doctrine was waived under the insurance exception discussed in *Parkulo.* The Court noted that the question of insurance coverage had not been developed before the circuit court. Consequently, the Court remanded the case for an inquiry into the possible existence of applicable insurance coverage. The Court stated: "If the State has not procured insurance indicating such coverage, the public duty doctrine serves as a bar to the Appellant's suit. If the State's insurance does provide coverage, the action may proceed, and liability will be limited only by the limits of insurance coverage." *Jeffrey I,* 198 W.Va. at 615, 482 S.E.2d at 232.

Upon remand, the circuit court, after conducting a hearing, concluded that the acts alleged in the *Jeffrey I* complaint were covered by the State's insurance. The circuit court also noted that, since the State's insurance policy specifically did not waive "any statutory or common law immunity," the case had to be dismissed on that additional ground.

It is from that ruling, and a like ruling in the *Miller* case, that the appellants now appeal.

### DISCUSSION

As has been previously explained, the "Public Duty Doctrine" is of common law

origin. In its common law form, it precludes the maintaining of an action against a governmental agency or officer unless a "special relationship" exists between the State and the party injured. In Syllabus Point 12 of *Parkulo v. West Virginia Probation and Parole, supra,* the Court, in some detail, outlined what must be shown for a "special relationship" to exist and to avoid the effect of the "Public Duty Doctrine." The Court said:

> The four requirements for the application of the "special relationship" exception to W.Va.Code § 29–12–5 cases are as follows: (1) An assumption by the state governmental entity, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the state governmental entity's agents that inaction could lead to harm; (3) some form of direct contact between the state governmental entity's agents and the injured party; and (4) that party's justifiable reliance on the state governmental entity's affirmative undertaking.

■ The common law form of the "Public Duty Doctrine" has been modified by the Legislature so that the doctrine does not preclude a negligence action where there is State insurance which expressly waives or alters the doctrine. Relating to this, we stated in Syllabus Point 10 of *Parkulo:*

> The public duty doctrine and its "special relationship" exception apply to W.Va. Code § 29–12–5 actions against the State and its instrumentalities, unless the doctrine is expressly waived or altered by the terms of the applicable insurance contract.

After the appellant, Bobby Z. Jeffrey, as Personal Representative of the Estate of Karen Jean Jeffrey, filed the complaint instituting the first of the two cases involved in this appeal, the circuit court dismissed the action on the ground that it could not be maintained because of the "Public Duty Doctrine." In the opinion resolving the appeal in *Jeffrey I,* we said: "[I]n the present case, absent some special relationship between Corrections and Karen Jeffrey, the public duty doctrine precludes the suit . . . ." We also said, "[I]n the present case, there is no indication that Corrections had any indication

that escape of any inmate could result in harm specifically to Karen Jeffrey." *Jeffrey I,* 198 W.Va. at 614, 482 S.E.2d at 231. In effect, we found that the facts did not establish the "special relationship" discussed in Syllabus Point 2 of *Parkulo v. West Virginia Board of Probation and Parole, supra.*

In the *Jeffrey I* appeal, however, we could not determine whether there was State insurance which waived or altered the "Public Duty Doctrine." We, therefore, stated:

> We recognized in *Parkulo* that the public duty doctrine could be waived or altered by the terms of the State's applicable insurance contract. 199 W.Va. at 178, 483 S.E.2d at 524. In syllabus point two of *Pittsburgh Elevator Co. v. West Virginia Board of Regents,* 172 W.Va. 743, 310 S.E.2d 675 (1983), we explained that "[s]uits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the State's liability insurance coverage, fall outside the traditional constitutional bar to suits against the State." We therefore remanded the matter in *Parkulo* to determine the precise parameters of the insurance contract, and we further instructed the lower court to permit the action to proceed if applicable insurance policies afforded coverage with respect to the claims asserted. 199 W.Va. at 180, 483 S.E.2d at 526.

*Jeffrey I,* 198 W.Va. at 615, 482 S.E.2d at 232.

We remanded *Jeffrey I* with directions that the circuit court determine if there was State insurance coverage which waived or altered the "Public Duty Doctrine."

Upon remand, the circuit court concluded that there was no such insurance coverage. As a consequence, the circuit court concluded that appellant Jeffrey was precluded from maintaining his action because of the "Public Duty Doctrine." The Court reached the same conclusion in the appellant Miller's action.

■ In examining the documents in these cases, we conclude that the circuit courts were correct. The State's insurance contract does not expressly waive or alter the "Public

Duty Doctrine." To the contrary, the State's insurance contract contains the following language: "It is a condition precedent of coverage under the policies that the additional insured does not waive any statutory or common law immunity conferred upon it."

■ As indicated in *Jeffrey I,* the record does not suggest that the State owed a special duty to Mrs. Jeffrey. Nor can we find that it was owed in the *Miller* case. Consequently, the "special relationship" provision of the "Public Duty Doctrine," does not apply. Further, the State's insurance coverage does not expressly waive or alter the "Public Duty Doctrine." As a consequence, the "Public Duty Doctrine" cannot be avoided under the "insurance exception." In light of these circumstances, *Parkulo v. West Virginia Board of Probation and Parole, supra,* dictates that the "Public Duty Doctrine" preclude the appellants from maintaining their actions. Therefore, the circuit courts correctly dismissed the action.

■ The Court notes that the appellants argue that section 319 of the Restatement (Second) of Torts creates a special duty for a public officer to control convicts such as Hottle and Swick. In effect, they claim that the Restatement provisions create a "special relationship" sufficient to eliminate the effect of the "Public Duty Doctrine" under the "special relationship exception." They further appear to argue that we should alter or supplement the requirements of Syllabus Point 12 of *Parkulo v. West Virginia Board of Probation and Parole, supra,* to hold that if the circumstance set forth in the Restatement exists, then a "special relationship" exists under our law. Restatement 319 provides that:

One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise rea-

sonable care to control the third person to prevent him from doing such harm.

In *Jeffrey I,* we stated:

Section 319 establishes a *duty.* Assuming breach of that *duty,* there is *negligence.* Having established *negligence,* however, *liability* does not automatically ensue. The public duty doctrine does not state that the entity cannot be deemed *negligent;* it simply states that the entity cannot be held *liable.* Even if Section 319 establishes negligence, the public duty doctrine precludes liability for such negligence; thus, Section 319 is of no assistance to the Appellant in furthering his claim.

*Jeffrey I,* 198 W.Va. at 615, 482 S.E.2d at 232.

We believe *Jeffrey I* and *Parkulo* to be accurate. We find unpersuasive the argument of appellants that Restatement 319 somehow alters or amends the "special relationship" requirements. In the present cases, the "Public Duty Doctrine," applies and precludes the appellants from maintaining their actions. The requirements of the "special relationship" exception have been clearly set out in Syllabus Point 12 of *Parkulo v. Board of Probation and Parole, supra.* Therefore, we decline to alter *Parkulo.*

For the reasons stated, the judgments of the Circuit Court of Kanawha County and the Circuit Court of Grant County are affirmed.

Affirmed.

Justice McGRAW did not participate in the decision of this case.